**Michael F. RAMSEY, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, Commissioner, Department of Correctional Services, R.J. McClellan, Superintendent, Southport Correctional Facility, Defendants.**

No. ·94–CV–9S(F).

United States District Court,
W.D. New York.

March 31, 1998.

---

Michael F. Ramsey, Auburn, NY, pro se.

Dennis C. Vacco, Attorney General for the State of New York, Joseph F. Reina, Assistant Attorney General, Buffalo, NY, of counsel, for Defendants.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge:

### JURISDICTION

The parties filed a consent to proceed before the undersigned on July 21, 1994. The matter is presently before the court on Defendants' motion for summary judgment, filed June 23, 1997.

### BACKGROUND

Plaintiff, Michael Ramsey, filed this *pro se* action under 42 U.S.C. § 1983 on January 5,

1994. Plaintiff alleges that, on September 10, 1993, when he was transferred to the Southport Correctional Facility from the Clinton Correctional Facility, corrections officers at Southport confiscated his writing paper and carbon paper which he needed to reply to legal appeals. Plaintiff also claims that, once at Southport, he was hindered from using the law library and from receiving notary services. In addition, Plaintiff asserts that he has been prohibited from practicing his religious beliefs in that he is not able to follow his religion's dietary laws. Finally, Plaintiff claims that, on March 29, 1991, he was prescribed a medical diet, but that Defendants cancelled the diet. Defendants answered the complaint on March 14, 1994.

On December 12, 1994, Plaintiff filed a motion for summary judgment, along with a memorandum of law and a statement of material undisputed facts. Defendants did not respond to the motion. On September 6, 1995, this court denied Plaintiff's motion for summary judgment, and, concluding that Plaintiff's complaint did not establish that Defendants had personal knowledge of the alleged violations of Plaintiff's constitutional rights, or that Defendants promulgated any policies designed to violate an inmate's constitutional rights, the court *sua sponte* granted summary judgment to Defendants and dismissed the complaint.

Plaintiff appealed the adverse decision to the United States Court of Appeals for the Second Circuit on September 28, 1995. On August 27, 1996, the Second Circuit reversed the judgment of this court, and remanded the action for further proceedings in accordance with its opinion. Specifically, the Second Circuit stated that Plaintiff should be permitted to amend his complaint[1] and that the record should reflect the fact that all pertinent materials obtained in discovery were

before the court prior to the granting of summary judgment in favor of Defendants. *Ramsey v. Coughlin*, 94 F.3d 71 (2d Cir. 1996).

On May 13, 1997, this court entered a scheduling order directing that any motions to amend the pleadings should be filed no later than June 9, 1997, and that any dispositive motions should be filed no later than June 20, 1997. Plaintiff did not file an amended complaint, and, in fact, as of the date of this Decision and Order, Plaintiff has filed no further documents in this action.

On June 20, 1997, Defendants filed a motion for summary judgment, along with a statement of material facts, a supporting memorandum of law, and a supporting affirmation containing relevant exhibits. Plaintiff has not responded to this motion.

For the reasons as set forth below, Defendants' motion for summary judgment is GRANTED.

## FACTS

On September 10, 1993, Plaintiff was transferred to the Southport Correctional Facility from the Clinton Correctional Facility. Plaintiff signed a form indicating which items he was allowed to obtain from his property bags by the Southport correctional officers. Exhibit B, Affirmation in Support of Defendants' Motion for Summary Judgment, dated June 27, 1997. However, upon Plaintiff's arrival at Southport, correctional officers confiscated Plaintiff's writing paper and carbon paper which Plaintiff used for legal purposes. In response to grievances filed by Plaintiff, correctional officers were directed, on November 3, 1993, to search Plaintiff's property bags for any writing and carbon paper taken on his arrival and to return them to Plaintiff. Exhibit K, Defen-

---

1. The Second Circuit, in its opinion dated August 27, 1996, stated that this court's denial of Plaintiff's motion to amend the complaint was in error as the court had relied on a letter from Plaintiff, dated June 6, 1994, withdrawing his motion to amend which, in actuality, was filed in another case brought by Plaintiff in this district. However, on August 24, 1994, Plaintiff sent a letter to this court indicating that he was withdrawing his request to amend his complaint in

both cases, including the instant action. Exhibit A, Affirmation in Support of Defendants' Motion for Summary Judgment, dated June 23, 1997. Apparently, the Second Circuit was unaware of the Plaintiff's August 24, 1994 letter. Although this court may have erroneously referred to the June 6, 1994 letter, it is a fact that the court was advised of Plaintiff's withdrawal of his motion to amend in the August 24, 1994 letter.

dants' Affirmation. Plaintiff was not permitted, however, to search his property himself, despite Plaintiff's appeal of this directive. According to Plaintiff, the writing materials were never returned, although Defendants, while acknowledging that the materials were taken from Plaintiff, claim that the materials were later returned. Nonetheless, in response to Plaintiff's complaint, a memorandum was issued on November 1, 1993 stating that all inmates arriving at Southport would be permitted to receive writing tablets and legal tablets from their personal property. Exhibit C, Defendants' Affirmation.

Once incarcerated at Southport, according to Plaintiff, between September 10 and September 17, 1993, he received no response to his requests for law books and other legal materials. The records show that Plaintiff requested books, writing paper, and carbon paper on September 26, 1993, October 3, 1993, October 17, 1993, October 25, 1993, November 3, 1993, and November 7, 1993, and corresponding supply lists indicate that Plaintiff received such items weekly. Exhibit F, Defendants' Affirmation. In his grievance appeal regarding the confiscation of his writing paper and carbon paper upon his arrival at Southport, Plaintiff represented that he was supplied thirty sheets of paper once a week, but that this supply was insufficient. Exhibit K, Defendants' Affirmation. Plaintiff's name also appears on law library distribution sheets signing out books from the law library in response to Plaintiff's requests. Exhibit E, Defendants' Affirmation.

According to Plaintiff, between September 10 and October 20, 1993, Plaintiff was required to wait for up to a two week period for notary services. Plaintiff's name appears on lists dated September 25, 1993, September 26, 1993, September 27, 1993, and November 2, 1993 of inmates requesting notary services with instructions to have one of the notaries assigned for service see the inmates on the list. Nonetheless, Plaintiff complained that it took up to a month for him to have his legal papers notarized, and, on October 12, 1993, filed a grievance complaining of the same. Exhibit L, Defendants' Affirmation. The grievance was granted on October 15, 1993, and on October 25, 1993, the griev-

ance committee noted that Plaintiff had received his notary service and was satisfied. Exhibit L. Nonetheless, Plaintiff appealed the grievance determination, stating that notary services should be available weekly or within three days of the request. The grievance review committee upheld the grievance determination, noting that the matter had been brought to the attention of the Law Library Coordinator. Exhibit L.

Prior to Plaintiff's incarceration at Southport, while he was in the custody of the Monroe County Sheriff's Department, Plaintiff refused to eat for four days on the basis that he wanted to be given a meatless diet based on religious grounds. Apparently, while employed as a food service assistant at the Jewish Home of Rochester in August, 1990, Plaintiff attended a two week orientation on Jewish culture and religion. At the conclusion of the orientation, Plaintiff decided to convert to Judaism, although there is no evidence that Plaintiff ever formally did so. Nonetheless, Plaintiff refused to eat non-kosher meals. On March 29, 1991, the Monroe County Jail physician, Dr. Shmigel, directed that Plaintiff be given a vegetarian diet on the basis that, for obvious medical reasons, Plaintiff required food to sustain him.

At the Southport facility, however, Plaintiff was not given a vegetarian diet. Plaintiff filed an administrative grievance on October 19, 1993, arguing that he was being denied a diet which conformed with his religion, namely a kosher diet. Exhibit H, Defendants' Affirmation. The grievance was denied on the ground that, in order to be served a kosher diet, Plaintiff was required to obtain the approval of the facility rabbi. Exhibit H. On October 21, 1993, the rabbi informed Plaintiff and the Southport staff that Plaintiff did not meet the eligibility for a kosher diet, and, instead, recommended that Plaintiff pursue the possibility of obtaining a meat-free diet. Exhibit H. On November 5, 1993, Plaintiff was informed by a correction counselor that there were no meatless diets afforded inmates, and, that, as an alternative, Plaintiff could discard the meat he received. On December 22, 1993, Plaintiff's appeal was denied on the basis that Plaintiff's records

did not indicate that he was Jewish and, as the alternative kosher diet was available for Jewish inmates only, Plaintiff was appropriately denied the diet. Exhibit H; Exhibit I.

Plaintiff also filed a grievance regarding the denial of a vegetarian diet on November 23, 1993. Plaintiff asserted that he was ordered a medical diet by Dr. Shmigel at the Monroe County Jail, and that the diet was never cancelled by Dr. Shmigel or any other medical personnel. Exhibit J, Defendants' Affirmation. On November 29, 1993, the grievance was denied on the ground that Dr. Shmigel was a county physician and not an employee of the Department of Correctional Services (DOCS), and that meatless trays were not permitted under DOCS policies. Plaintiff appealed the decision to Defendant McClellan, the Superintendent of Southport, on November 30, 1993, claiming that DOCS policies stated that any medical treatment provided to an inmate by a physician prior to being placed in the custody of DOCS must be honored. Exhibit J. On December 3, 1993, McClellan denied the appeal on the ground that a vegetarian diet was not a medical issue, that DOCS made no provisions for providing meatless diets to those who objected to eating meat, and that Plaintiff could refrain from eating meat if he so chose. Exhibit J.

Finally, on September 15, 1993, Plaintiff sent a letter to Defendant Coughlin alleging that Coughlin was harassing and retaliating against Plaintiff because of Plaintiff's ongoing litigation. Coughlin responded to Plaintiff's letter on October 6, 1993. Exhibit N, Defendants' Affirmation. Coughlin responded to Plaintiff's particular allegations that Plaintiff was being transferred from facility to facility in order to hinder his access to the courts, that the staff at Southport was instructed to confiscate Plaintiff's writing materials upon arrival at the facility, and that Plaintiff was being denied access to law library services. Exhibit N. Coughlin addressed these issues, indicating that Plaintiff had been transferred from the Wende Correctional Facility to the Auburn Correctional Facility because of assaultive behavior, and that another transfer from the Clinton Correctional Facility to the Attica Correctional

Facility was made prior to the time of any knowledge of Plaintiff's lawsuit. Plaintiff's transfer from Southport, according to Coughlin, placed him within the Western District of New York, actually facilitating his access to this court. Exhibit N. As to the legal supplies and library access, Coughlin outlined the rules regarding supplies, and indicated that he understood the matter to have been addressed by Southport First Deputy Superintendent Melvin Hollins. Exhibit N. Coughlin directed Plaintiff to address any further difficulties to Hollins. In response, on October 12, 1993, Plaintiff again wrote to Coughlin, accusing Coughlin of lying regarding the 1992 assaultive behavior, and again arguing that he was being given insufficient legal supplies. Exhibit N.

According to Plaintiff, Defendant Coughlin is liable for these incidents as such actions were taken with Coughlin's knowledge, approval, and authorization. Similarly, Defendant McClellan is liable as the complained of actions were taken by the Southport staff at McClellan's direction and with McClellan's approval and authorization.

### DISCUSSION

Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain summary judgment. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be

tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255; *Rattner, supra,* at 209.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra,* at 247–48. *See also Lipton v. The Nature Company,* 71 F.3d 464, 469 (2d Cir.1995). While the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir .1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The nonmoving party may defeat the summary judgment motion by producing sufficient specific evidence to establish that there is a genuine issue of material fact for trial. *Celotex, supra,* at 322–23. "Mere conclusory allegations or denials" in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *Lipton, supra,* at 469.

Plaintiff has alleged that his civil rights were violated by Defendants under 42 U.S.C. § 1983. Pursuant to 42 U.S.C. § 1983, an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the conduct complained of was committed by a person acting under the color of state law, and that the conduct deprived the plaintiff of rights secured by the Constitution or the laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Eagleston v. Guido,* 41 F.3d 865, 875–76 (2d Cir.1994).

In this case, Plaintiff contends that his constitutional rights under the First and Fourteenth Amendments to the United States Constitution were violated when his writing materials were confiscated, when he was not given access to the law library and to notary services, and when he was denied a kosher diet or, alternatively, a meatless diet, required by his religious belief.

A review of the relevant records filed in this case show that Defendant McClellan's only personal involvement in the complained of actions was on December 3, 1993 when he denied Plaintiff's appeal of the denial of his grievance requesting a vegetarian diet. Plaintiff also alleges that McClellan directed certain actions, and that Coughlin failed to correct these actions, however, none of the documents submitted by either Plaintiff in support of his earlier motion for summary judgment, or by Defendant, in support of their instant motion establish these allegations.[2] Plaintiff did correspond with Coughlin regarding alleged violations of his constitutional rights, and Coughlin replied to Plaintiff, answering his complaints, and directing him to the Southport First Deputy Superintendent for further assistance. Based on the record, the court cannot find any genuine issue of material fact as to McClellan's or Coughlin's role in the incidents at issue in this case, and, as such, concludes that neither McClellan nor Coughlin personally violated Plaintiff's rights, or

---

**2.** A review of Plaintiff's exhibits filed in support of his earlier motion for summary judgment reveals complaints regarding Defendant McClellan's actions. However, these complained of actions took place after the filing date of the complaint in this action and Plaintiff expressly withdrew his motion to amend the complaint. As such, the court will not consider these allegations.

promulgated policies designed to violate Plaintiff's, or any other inmate's, constitutional rights.

■ To the extent that Plaintiff alleges that McClellan and/or Coughlin failed to supervise the alleged actions of their subordinates, it is well settled that an individual cannot be liable under Section 1983 for a violation of a person's constitutional rights on the basis of *respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). A defendant's personal involvement in an alleged deprivation of constitutional rights is a necessary element of a Section 1983 complaint. *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065–66 (2d Cir.1989).

■ A plaintiff may show that a supervising defendant is "personally involved" within the meaning of Section 1983 if the defendant: (1) directly participated in the infraction, (2) failed to remedy the violation after notification of the violation, (3) instituted a policy or custom which permitted such infractions to occur, or allowed the continuance of an unconstitutional policy or custom, (4) acted in a manner constituting gross negligence in the management of subordinates responsible for the unlawful acts, or (5) exhibited deliberate indifference by failing to act on information that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

■ In this case, Plaintiff has only shown that he sent two letters to Defendant Coughlin, and that Coughlin responded to at least one letter on October 6, 1993. As to Defendant McClellan, Plaintiff only alleges that McClellan was responsible for the actions of his subordinates, and that McClellan issued orders directing unconstitutional actions that were carried out by such subordinates. However, a defendant cannot be liable under Section 1983 "simply because the defendant was in a high position of authority in the prison system." *Rivera v. Coughlin*, 1994 WL 263417 (S.D.N.Y.1994) (citing *Ayers v.*

*Coughlin*, 780 F.2d 205, 210 (2d Cir.1985)). Where, as here, a plaintiff cannot show that a supervising individual had any personal involvement in the asserted constitutional violations, nor can he establish that the individual promulgated or was otherwise aware of any unconstitutional customs or policies, the claim against that individual must be dismissed. *Colon v. Coughlin, supra*, at 873–74; *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Parris v. Coughlin*, 1993 WL 328199 at *3 (N.D.N.Y.1993). Plaintiff has not established, other than by giving conclusory statements, that Defendants Coughlin and McClellan were aware of any violation of Plaintiff's constitutional rights, or that Coughlin and McClellan promulgated any policies designed to violate an inmate's constitutional rights. *See Colon v. Coughlin, supra*, at 873–74.

The court further finds that, even if Defendants McClellan and Coughlin could be held liable under Section 1983, on this record, it has not been established that Plaintiff's constitutional rights were violated.

■ Plaintiff first alleges that his right of access to the courts was unconstitutionally hindered. The United States Constitution guarantees prisoners meaningful access to the courts, and for *pro se* plaintiffs, reasonable access to the law libraries. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Morello v. James*, 810 F.2d 344, 346–47 (2d Cir.1987). That access, however, is not unlimited, and prison officials may impose reasonable restrictions on the use of prison law libraries. *Morello, supra*, at 347. Further, while *Bounds* acknowledged the right of access to the courts, it did not create an "abstract, free-standing right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996). Where it is alleged that access to a law library, or to materials needed for court matters, has actually been denied, a plaintiff must allege that the deprivation proximately caused some prejudice or denial of a legal claim. *Lewis, supra*, at 351, 116 S.Ct. at 2180. In other words, in alleging a denial of access to the courts, a plaintiff must allege deliberate conduct that materially prejudiced a legal action

that the prisoner sought to pursue. *Ramirez v. Holmes*, 921 F.Supp. 204, 207 (S.D.N.Y. 1996).

In this case, Plaintiff has simply alleged that he was denied access to the courts by Defendants' actions in not providing him with quick responses to requests for books, writing paper, notary services, and library services. However, the undisputed evidence does not show, and Plaintiff has not alleged, actual prejudice to an ongoing lawsuit. Rather, Plaintiff only claims that in order to respond to an answer to his pro se brief to the New York State Supreme Court, Appellate Division, Plaintiff was required to trade food for paper when his response went over 150 pages. Complaint, at ¶ 3. Plaintiff's grievances similarly do not show that the insufficient paper supply and slow response time for notary services prejudiced any ongoing lawsuit. The court finds that there is no genuine issue of material fact in the record, and that the record does not establish any viable constitutional violation of denial of access to the courts.

■ As to Plaintiff's claim that he was deprived of his right to a religious diet, it is a clearly established that a prisoner has a right to receive a diet consistent with his or her religious scruples. *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir.1975). All that is required for a prison diet not to burden an inmate's free exercise of religion is the provision of a diet sufficient to sustain the prisoner in good health without violating his religious dietary laws. *Id.* In this case, however, Plaintiff has not established that he is Jewish and thus entitled to a kosher diet. The undisputed facts show that a facility rabbi examined Plaintiff's request for a kosher diet and that the diet was denied because the rabbi determined that Plaintiff was not eligible. Specifically, the Central Office Review Committee of the Inmate Grievance Program found that there was "nothing in [Plaintiff's] records indicating that he is Jewish . . . Because the alternative diet is available for inmates only . . . the [Plaintiff] was appropriately denied the diet." Exhibit H. As to Plaintiff's request for a vegetarian diet, Plaintiff has not made the required evidentiary showing to sustain a constitutional dietary claim regarding his request for a vegetarian diet. *See, e.g., Benjamin v. Coughlin*, 905 F.2d 571, 580 (2d Cir.1990) (affirming dismissal of a religious dietary claim brought by Rastafarian prisoners who "failed to clearly define the claim or to make the [required] evidentiary showing.") DOCS policies clearly do not provide for vegetarian meals, although meat substitutes are available at meals so that inmates who do not wish to eat meat are not required to do so. As the undisputed facts show that Plaintiff has not converted to Judaism, and that Plaintiff's records establish that he is not Jewish, Defendants cannot be found to have violated Plaintiff's constitutional right to free exercise of religion when they did not provide him with a kosher meal, or alternatively, a meatless diet.

■ Finally, Plaintiff claims that the denial of a vegetarian diet interfered with medical treatment ordered by a medical doctor.[3] However, a memorandum dated March 29, 1991 from the Monroe County Sheriff's Department shows that the vegetarian diet was ordered for the simple reason that Plaintiff refused to eat until he received a vegetarian diet. Plaintiff's Exhibit 11 in Support of Plaintiff's Motion for Summary Judgment, dated December 12, 1994. As such, the undisputed facts do not establish any medical reason for the vegetarian diet, and thus Defendants' refusal to provide a diet which did not conform to DOCS policies does not con-

---

3. Plaintiff appears to be alleging a claim under the Eighth Amendment to the United States Constitution for failure to provide medical treatment. It is well settled that the Eighth Amendment prohibits "cruel and unusual" punishment suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care.

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In cases involving the medical care of prisoners, to set forth a claim under the Eighth Amendment for protection against cruel and unusual punishment, a prisoner must show "deliberate indifference" on the part of the defendants. *Estelle, supra*, at 104. Denying or delaying access to medical care or intentionally interfering with prescribed treatment constitutes deliberate indifference. *Estelle, supra*, at 104.

stitute deliberate indifference to Plaintiff's medical needs. Accordingly, it was not a violation of Plaintiff's constitutional right to adequate medical care under the 'Eighth Amendment for Defendants to deny Plaintiff's request for a vegetarian diet.

The court also notes that, in his arguments in support of his own motion for summary judgment which was previously decided by this court, Plaintiff asserts other claims against Defendants Coughlin and McClellan that took place after November 8, 1993 the date of the complaint, and after January 5, 1994, the filing date of the complaint. As Plaintiff expressly decided not to amend his complaint by letter dated August 24, 1994, the court will not address these additional allegations as Plaintiff cannot amend his complaint through the use of other filings. *See, e.g., Greaves v. State of New York,* 1997 WL 35536 at *3 (S.D.N.Y.1997) (Plaintiff's memorandum of law alleging personal involvement of defendant could not defeat defendant's motion for summary judgment where allegations set forth in memorandum did not appear in Plaintiff's complaint).

### CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is GRANTED.

SO ORDERED.