**Booker TORRENCE, Plaintiff,**

v.

**Christopher PELKEY,
et al., Defendants.**

**No. Civ. 396CV299HBF.**

United States District Court,
D. Connecticut.

July 6, 2001.

Howard Pierce (Hartford, CT), for plaintiff. '

Terrance M. O'Neill (Hartford, CT), for defendant.

### RULING ON DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

FITZSIMMONS, United States Magistrate Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his medical needs. Defendants are the State of Connecticut Department of Corrections, Christopher Pelkey, Warden at the Cheshire Correctional Facility ("Cheshire"); and Steven Stein, the medical doctor responsible for the provision of medical services to the inmates at Cheshire. Plaintiff seeks money damages as well as injunctive relief. Pending is Defendants' Motion for Judgment on the Pleadings [Doc. # 88]. For the reasons discussed below, defendants' motion is GRANTED in part and DENIED in part.

### STANDARD

The standards applicable to a motion for judgment on the pleadings under Rule 12(c) are identical to those for a Rule 12(b)(6) motion to dismiss. *See Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.) (citation omitted), *cert. denied,* 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014–

15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citations omitted); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "The issue [on a motion to dismiss] is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.,* 727 F.Supp. 784, 786 (D.Conn. 1990), *citing Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686. Judgment on the pleadings should be granted if the movant "is entitled to judgment as a matter of law." *Burns Int'l Security Servs. v. International Union,* 47 F.3d 14, 17 (2d Cir.1995).

### *BACKGROUND*

Keeping this standard in mind, the court accepts as true the following allegations taken from the second amended complaint.

In January 1994, plaintiff was received into custody by the State of Connecticut Department of Corrections ("DOC"). [Doc. # 82, para. 10.] A medical exam performed by DOC staff on January 24, 1994, found no evidence that plaintiff suffered from hepatitis, pancreatitis, or diabetes symptoms. [Para. 11.]

From May 25 through June 1, 1995, plaintiff made daily complaints to DOC staff that he felt "acutely ill," described his symptoms as "blurred vision, dry throat and mouth, uncontrollable thirst, abnormally frequent need to urinate, fatigue, a 'metallic' breath odor, stomach pain and tenderness, dizziness, and a general feeling of being acutely ill," and requested medical attention. [Paras. 33–42.] During this pe-

riod, defendants provided no medical care to plaintiff. [*See id.*]

On June 2, 1995, plaintiff was permitted to go to the Cheshire medical unit where he told staff members he was "suffering from weight loss, uncontrollable thirst, shortness of breath, a 'metallic' breath odor, progressive loss of energy, extreme fatigue, stomach pain, vomiting, headaches, blurred vision and the need to frequently urinate." [Para. 43.] Plaintiff was seen later in the day by Dr. Steven Stein, although Stein did not physically examine plaintiff or order any screening tests at that time. [Para. 44.] Stein wrote in plaintiff's medical file that plaintiff had "multiple minor complaints unassociated." [*Id.*] After leaving the medical unit on June 2, plaintiff filed a medical grievance emergency form, requesting appropriate medical attention. [Para. 45.] Plaintiff has never received a response to this form. [Para. 46 .]

Plaintiff continued to experience the same symptoms on June 3 and June 4, 1995. [Para. 47, 49.] In addition to these symptoms, on June 4 he started spitting up blood. [Para. 49.] On both days, plaintiff reported his symptoms to DOC staff and requested medical attention. [Paras. 47, 49.] Plaintiff did not receive medical care on either day. [Paras. 48, 50.]

Plaintiff was seen again in the medical unit around 2:00 A.M. on June 5, 1995, complaining of the same symptoms. [Para. 52.] Plaintiff did not see a doctor during this visit and did not undergo any screening tests. [Para. 53.] In the afternoon of June 5 and after plaintiff returned to his cell, he again requested medical attention after he began experiencing chest pains. [Para. 54.] Plaintiff returned to the medical unit that afternoon, where a nurse gave him antacids and Maalox for his stomach pains before he returned to his cell. [Paras. 55–56.]

On June 6, 1995, at approximately 1:00 A.M., correctional officers summoned a nurse to plaintiff's cell because plaintiff was too weak to sit, stand, or go to the medical unit. [Para. 57.] Plaintiff was not examined by a doctor, scheduled for screening tests, or taken back to the medical unit at that time. [Para. 56.] At approximately 4:00 A.M., a nurse placed a follow up call to plaintiff's cellblock to check on his status. [Para. 57.] A corrections officer called the medical unit at approximately 8:15 A.M. on June 6 to request wheelchair transport for plaintiff to the medical unit, as plaintiff was unable to sit or stand on his own. At approximately 9:00 A.M., plaintiff was taken to the medical unit where he was seen by Dr. Stein. [Paras. 59–60.] Dr. Stein ordered initial medical screening tests, including blood and urine analyses. [Para. 61.] The blood and urine tests evaluated in the medical unit indicated that plaintiff had elevated levels of glucose, ketones and blood sugar. [Paras. 63–64.] Dr. Stein did not take further action on June 6 to treat plaintiff. [Para. 65.]

Plaintiff requested and was seen by Dr. Swaney, another doctor at Cheshire, on June 6. [Para. 66.] After examining the plaintiff, Dr. Swaney ordered plaintiff be immediately transferred to a hospital for treatment of diabetic acidosis. [Paras. 66–67.] Plaintiff was not immediately transported to the hospital, and was instead placed into a pre-test HIV counseling session lasting twenty minutes, and then left in front of the nurses' station for over an hour. [Paras. 70–72.] During this period, plaintiff drifted in and out of consciousness, was unable to hold his head up and was barely able to speak. [Para. 71.]

Later that same day, plaintiff was admitted to the intensive care unit at St. Mary's Hospital in Waterbury, Connecticut. [Para. 29.] Plaintiff remained in the intensive care unit for three days and was released from the hospital on June 14, 1995. [Para. 29.] While in the hospital, plaintiff was diagnosed with "severe diabetic ketoacidosis/insulin dependent diabetes mellitus." [Para. 29.]

On or about June 7, 1995, laboratory results from the June 6 tests were placed into plaintiff's DOC medical file, showing that he tested positive for the hepatitis C virus ("HCV"). [Para. 31.] Defendants never advised plaintiff that he has HCV, nor have they provided him any treatment for HCV. [Para. 32.] Between June 7, 1995 and March 6, 2000, defendants did not attempt to monitor plaintiff's HCV. [Para. 32.] Plaintiff again tested positive for HCV on January 19, 2000, but received no information on the diagnosis or HCV treatment. [Para. 88.]

On multiple occasions in 1995, 1996, and 1997, plaintiff reported to the medical unit to receive his daily insulin injections and was given improper doses of insulin which posed a serious risk to plaintiff's health. [Paras. 81–83.] On two occasions in 1997, plaintiff was injected with insulin prescriptions for other inmates, resulting in a too large dosage of insulin. [Para. 84.]

On June 5, 1999, plaintiff was transferred to the Carl Robinson Correctional Facility in Enfield, Connecticut. [Para. 85.] Results from a medical screening analysis performed that same day indicated that plaintiff was suffering from liver disease. [Para. 86.] Plaintiff was not advised of the test results and no further testing was ordered. [Para. 86.]

*DISCUSSION*

Defendants seek judgment on the pleadings on all of plaintiff's claims. In support of their motion, defendants argue that "(1) plaintiff failed to exhaust his administrative remedies; (2) the claims against the State of Connecticut are barred by the

Eleventh Amendment; (3) the negligence claims against the individual defendants are barred by C.G.S. § 4–165; and (4) the plaintiff has failed to allege any facts which would suggest that Defendant Pelkey had any personal involvement in the events ostensibly giving rise to this action." [Doc. # 89, at 1.] These arguments are discussed further below.

### 1) *Failure to Exhaust Administrative Remedies*

The defendants contend that the claims against them should be dismissed because plaintiff failed to exhaust his administrative remedies. Plaintiff responds by making four arguments: (1) plaintiff has exhausted the administrative remedies; (2) that § 1997e as amended by the Prison Litigation Reform Act ("PLRA") is not applicable because plaintiff's injuries and the filing of his complaint pre-date the enactment of the statute; (3) even if the court chose to apply the requirements of the PLRA, plaintiff complied with the requirements to the extent possible; and (4) that deliberate indifference to medical needs claims are not to the PLRA exhaustion requirements because they are not prison conditions.

The Prison Litigation Reform Act, signed into law April 26, 1996, requires an inmate to exhaust his administrative remedies before bringing a § 1983 action with respect to prison conditions. *See* 42 U.S.C. § 1997e(a). The term "action ... with respect to prison conditions" is not defined in § 1997e. The term is defined, however, in another portion of the Prison Litigation Reform Act of 1996, Pub.L. 104–140, 110 Stat. 1327, which is codified at 18 U.S.C. § 3626(g)(2). There the term is defined to be "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings...." Other courts have determined that this definition "is the best indication of what Congress intended when it used the term 'action ... with respect to prison conditions' in § 1997e(a)." *Moore v. Smith*, 18 F.Supp.2d 1360, 1363 (N.D.Ga.1998). *See Cruz v. Jordan*, 80 F.Supp.2d 109, 116 (S.D.N.Y.1999) (citing cases).

■ Here, the plaintiff filed this action on February 22, 1996, two months before the PLRA was signed into law. The Second Circuit and other courts have held that the requirement of exhaustion of administrative remedies set forth in 42 U.S.C. § 1997e(a) cannot be applied retroactively to a case pending at the time the PLRA was enacted. *See Salahuddin v. Mead*, 174 F.3d 271, 275–76 (2d Cir.1999); *Bishop v. Lewis*, 155 F.3d 1094, 1095 (9th Cir.1998); *Wright v. Morris*, 111 F.3d 414, 418 (6th Cir.), *cert. denied*, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997); *Bolton v. Goord*, 992 F.Supp. 604, 624–25 (S.D.N.Y.1998); *Proctor v. Vadlamudi*, 992 F.Supp. 156, 158 (N.D.N.Y.1998); *Cunningham v. Eyman*, 11 F.Supp.2d 969, 975–76 (N.D.Ill.1998). Because this action was pending prior to the enactment of the exhaustion requirement in the PLRA, the court will not apply § 1997e(a) retroactively to the plaintiff's claims. Accordingly, the defendants' motion is denied on this ground and the court need not address the plaintiff's remaining arguments on this claim.

### 2) *Claims Against the State of Connecticut DOC*

Defendants argue that the State of Connecticut should be dismissed from the case as the Eleventh Amendment bars any claims for relief plaintiff is seeking from

it.[1] Plaintiff responds that "claims against a state seeking an injunction for improper medical treatment are not barred by the Eleventh Amendment." [Doc. # 90, at 18.]

██ The Eleventh Amendment states that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has interpreted this provision to bar suits against a state brought by its own citizens. *See e.g., Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Employees v. Department of Public Health & Welfare,* 411 U.S. 279, 280, 93 S.Ct. 1614, 1615–16, 36 L.Ed.2d 251 (1973). "Although Congress is empowered under section five of the Fourteenth Amendment to override Eleventh Amendment immunity and 'to enforce 'by appropriate legislation' the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority,' ... it is well settled that 42 U.S.C. § 1983 does not constitute an exercise of that authority." *Dube v. State Univ. of New York,* 900 F.2d 587, 594 (2d Cir.1990) (citations omitted). This principle applies equally to state agencies or departments, regardless of whether the relief sought is legal or equitable. *See Dube,* 900 F.2d at 594, *quoting Pennhurst State School and Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986).

██ Here, plaintiff names the State of Connecticut Department of Corrections as a defendant. It is well-settled that a state agency is not a "person" within the meaning of § 1983. *See Will v. Michigan Dep't State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Fischer v. Cahill,* 474 F.2d 991, 992 (3d Cir.1973) (state prison department cannot be sued under § 1983 because it does not fit the definition of "person" under § 1983); *Ferguson v. Morgan,* No. 90 Civ. 6318(JSM), 1991 WL 115759, at *1 (S.D.N.Y. June 20, 1991), (Otisville Correctional Facility medical staff not a person under § 1983), *Grabow v. Southern State Correctional Facility,* 726 F.Supp. 537, 538–39 (D.N.J.1989) (Department of Corrections not a person under § 1983); *Sittig v. Illinois Dep't of Corrections,* 617 F.Supp. 1043, 1044 (N.D.Ill.1985) (Illinois Department of Corrections not a person under § 1983); *Allah v. Commissioner of Dep't of Correctional Services,* 448 F.Supp. 1123, 1125 (N.D.N.Y. 1978) (New York Department of Correctional Services not a person under § 1983).

██ Plaintiff makes no argument that the State has waived its sovereign immunity or consented to this court's jurisdiction in the matter at hand. Thus, plaintiff's claims against the State of Connecticut Department of Corrections lack an arguable legal basis and must be dismissed.

### 3) *Negligence Claims Against the Individual Defendants*

Defendants argue that plaintiff's third claim should be dismissed as it alleges that the individual defendants were negligent in performing their job duties.[2] Defendants

---

**1.** The Court construes defendants to be referring to the State of Connecticut Department of Corrections when discussing the "State of Connecticut" in its motion. The court has found no evidence that the plaintiff is attempting to sue the State independent of the Department of Corrections. *See Second Amended Complaint,* at 3.

**2.** It is somewhat unclear whether defendants are challenging plaintiff's second or third claims for relief. To the extent that defen-

argue that Connecticut General Statute § 4–165 provides immunity to the individual defendants from negligence claims. The statute states, "[n]o state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." CONN.GEN.STAT. § 4–165.

Plaintiff responds that § 4–165 cannot provide immunity for state employees who allegedly violate federal law. Plaintiff also argues that the claims alleged in the complaint are based on reckless or deliberately indifferent conduct rather than negligence.

▆▆▆ The court agrees with plaintiff to the extent that state law cannot shield state employees from liability for violations of federal law. *See Schiff v. Kerrigan,* 625 F.Supp. 704, 707 n. 7 (D.Conn.1986), *citing Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). However, in order to state a cognizable Eighth Amendment claim under § 1983, allegations that defendants acted negligently are insufficient as a matter of law. *See Hudson v. Greiner,* 2000 WL 1838324, *6 (S.D.N.Y. Dec.13, 2000), *quoting Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y. 1988). Thus, to the extent plaintiff's response to the applicability of Connecticut General Statute § 4–165 to this case is based on a potential cause of action under § 1983, allegations of negligent conduct are insufficient.

▆▆▆ Plaintiff also responds to defendants' motion by arguing that the third claim for relief alleges that defendants acted recklessly in prolonging plaintiff's pain and suffering. The court agrees that the third claim for relief in part alleges reckless conduct. However, the court is unable to find a separate cause of action alleged in the third claim which would not be encompassed by the Eighth Amendment claim. The court notes that, to some extent, reckless conduct is included in the culpability requirement for an Eighth Amendment deliberate indifference to serious medical needs claim. *See Word v. Croce,* 2001 WL 434613, *4 (S.D.N.Y. Apr.27, 2001), *citing Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) (subjective component of deliberate indifference met by "showing defendants acted with a state of mind akin to criminal recklessness—that the defendants knew of and disregarded a grave risk to the prisoner's health or safety"); *Hudson v. Greiner,* 2000 WL 1838324, *6 (S.D.N.Y. Dec. 13, 2000); *Koehl v. Rowe,* 1997 WL 724647, *5 (E.D.N.Y. Nov. 14, 1997). To the extent that plaintiff claims a cause of action based upon reckless conduct, the Court finds that this claim is encompassed in plaintiff's Eighth Amendment claim. Plaintiff has also failed to provide any case law indicating an independent cause of action for reckless conduct that would be applicable to this case.[3]

Finally, plaintiff may be characterizing the third claim for relief as stating a cause of action for detrimental reliance. [Doc.

dants are challenging plaintiff's second claim for relief, the Court finds that the second claim states a cause of action for intentional infliction of emotional distress, thus rendering the applicability of Connecticut General Statute § 4–165 moot.

**3.** The court also notes that the civil rights statute was not meant to redress medical mal-

practice claims that could be adequately addressed under state law. *See Hathaway v. Coughlin,* 37 F.3d 63, 68 (2d Cir.1994) ("mere medical malpractice does not constitute an Eighth Amendment violation"); *Tomarkin v. Ward,* 534 F.Supp. 1224, 1230–31 (S.D.N.Y. 1982).

# 90, at 20.] However, plaintiff did not cite, and the court has been unable to find, any cases establishing a cognizable cause of action for detrimental reliance in the context of the provision of medical care to prisoners by Department of Corrections' employees.

For the reasons discussed above, defendants' motion is GRANTED, to the extent that plaintiff's third claim for relief is DISMISSED for failure to state a cause of action.

### 4) Claim Against Defendant Pelkey

Defendants argue that plaintiff has failed to allege any facts that would demonstrate Warden Pelkey had any personal involvement in the actions underlying plaintiff's claims. Plaintiff responds that a suit for injunctive relief may be maintained against a defendant sued in his official capacity if the "complaint alleges that the official had 'responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need.'" Doc. # 90, at 23, quoting Koehl v. Dalsheim, 85 F.3d 86, 89 (2d Cir.1996). In the alternative, plaintiff responds that sufficient allegations of Pelkey's personal involvement are pled in the complaint.

In this case, Pelkey is sued in his official capacity. [Doc. # 82, para. 6.] To the extent that plaintiff seeks damages from Pelkey, those claims are barred by the Eleventh Amendment. However, plaintiff also seeks injunctive relief against Pelkey and the other defendants. "Injunctive relief may be obtained in a § 1983 action for deliberate indifference to a serious medical need, even absent an official's personal involvement, if the complaint alleges that the official had 'responsibility to ensure that prisoners' basic needs were met, and the complaint adequately alleged deliberate indifference to a serious medical need.'" White v. Mitchell, 2001 WL 64756, *3 (E.D.N.Y. Jan. 18, 2001), quoting Koehl v. Dalsheim, 85 F.3d 86, 89 (2d Cir.1996); see also Davidson v. Scully, 2001 WL 533719, *4 (S.D.N.Y. May 18, 2001) (collecting cases). Here, plaintiff has adequately alleged deliberate indifference to a serious medical need and that Pelkey was responsible for ensuring the "provision of medical care." [Doc. # 82, para. 6.] Thus, defendants' motion seeking to have Pelkey dismissed is DENIED.

## CONCLUSION

Defendants' Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part. Defendants' motion is granted to the extent that the State of Connecticut Department of Corrections is dismissed as a defendant and plaintiff's third claim for relief is dismissed.

## RULING ON PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND ON DEFENDANTS' MOTION FOR RECONSIDERATION

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his serious medical needs. Defendants are Christopher Pelkey, Warden at the Cheshire Correctional Facility ("Cheshire"); and Steven Stein, the medical doctor responsible for providing medical services to the inmates at Cheshire. Plaintiff seeks money damages as well as injunctive relief.

Plaintiff seeks leave to amend his complaint to add two new defendants, John Armstrong, Commissioner of the Department of Corrections; and Dr. Edward Pesanti, Medical Director for the University of

Connecticut Health Center, Correctional Managed Health Care; and to add a claim that defendants violated his right to equal protection under the Fourteenth Amendment. [Doc. # 107.] Defendants object to the motion for leave to file a third amended complaint [Doc. # 108] and also request that the court reconsider its ruling that plaintiff was not required to exhaust his claims under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA") [Doc. # 109]. **For the reasons discussed below, defendants' motion for reconsideration is GRANTED. Upon reconsideration, the court affirms its prior ruling; defendants' objections are discussed further below in connection with the court's ruling on plaintiff's motion to file his third amended complaint. Plaintiff's motion for leave to file a third amended complaint is GRANTED, subject to the conditions set forth below.**

### STANDARD

Rule 15(a) requires that a court's permission to amend a pleading "shall be freely given when justice so requires." *See* Rule 15(a), Fed.R.Civ.P. The decision whether to grant leave to amend is within the court's sound discretion. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). As *Foman* "makes equally and explicitly clear, that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing spirit of the Federal Rules.'" *United States v. Continental Illinois Nat'l Bank & Trust*, 889 F.2d 1248, 1254 (2d Cir.1989) (quoting Rule 1, Fed.R.Civ.P., which states that rules are to be construed "to secure the just, speedy, and inexpensive determination of every action."). "[L]eave to amend need not be granted with respect to amendments which would not serve any purpose." 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.08, 15–8081 (2d Ed.1996); *Foman*, 371

U.S. at 182, 83 S.Ct. 227 ("futility of amendment" is a justifying reason to deny amendment).

### DISCUSSION

#### I. *Background*

The court assumes familiarity with the facts and procedural history of this case as they are set forth in its ruling dated July 6, 2001 [Doc. # 104]. Those recitations of the facts and procedural history of the case are hereby incorporated by reference into this ruling. Additional facts and procedural history are set forth below.

Plaintiff filed this complaint *pro se* on February 22, 1996, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment's prohibition against cruel and unusual treatment. Specifically, plaintiff's original complaint claimed that deliberate indifference constituting "medical neglect of [his] needs, has caused damaged to [his] kidneys, liver, heart, eyes and may have damaged [his] nerve system beyond repair causing diabetes." [Doc. # 2, at 2.] Plaintiff's allegations stemmed from the course of medical care provided to him from May 25 to June 6, 1995, and from June 14, 1995, after his release from St. Mary's Hospital, to the present. [Doc. ## 2, 14.]

The court appointed *pro bono* counsel for plaintiff on October 22, 1999. [Doc. # 61.] Plaintiff's counsel filed his appearance in the case on October 26, 1999, at the same time filing a motion for leave to amend the *pro se* amended complaint, which resulted in the filing of an amended complaint on November 23, 1999. [Doc. # 63.]

At that time, the court ordered plaintiff to serve his discovery requests on or before December 7, 1999. [Doc. # 66.] Plaintiff thereafter filed a motion to compel on February 17, 2000, requesting that the court order defendants to respond to

his First Requests for Production. [Doc. # 68.] On March 1, 2000, plaintiff filed a motion for extension of time, seeking an additional "thirty days after the date Plaintiff receives all requested medical documents" before disclosing his medical expert. [Doc. # 71.] Plaintiff acknowledged that defendants provided "limited medical records" on February 18, 2000, but indicated that he had not received any other medical documents.[1] [*Id.*]

Plaintiff filed a motion for leave to file a second amended complaint on August 21, 2000. [Doc. # 77.] Defendants filed their answer to the new complaint on September 28, 2000. [Doc. # 79.] Plaintiff's motion to file the Second Amended Complaint was granted *nunc pro tunc* on January 9, 2001. [Doc. # 83.] In this complaint, plaintiff for the first time explicitly alleged that defendants' conduct constituted deliberate indifference to a serious medical need with respect to his Hepatitis C Virus ("HCV") status. Specifically, plaintiff alleged that, on June 6, 2000, Dr. Stein ordered that plaintiff undergo blood tests. [Doc. # 82, para 28.] On or about June 7, 2000, the results of the blood tests indicating that plaintiff tested positive for HCV were delivered to the medical unit. [*See id.*] Plaintiff alleged that, despite receiving the test results, defendants never informed him that he tested positive for HCV and failed to monitor or provide treatment to him for the disease.

On June 5, 1999, plaintiff was transferred from Cheshire to the Carl Robinson Correctional Facility, in Enfield, Connecticut ("Carl Robinson"). At that time, plaintiff underwent a medical screening analysis, the results of which indicated that plaintiff was suffering from liver disease. Plaintiff alleged that after receiving those results defendants did not order further testing or advise plaintiff of the results. [Doc. # 82, para 86.] On January 19, 2000, plaintiff underwent a second blood analysis, which again indicated that he suffered from HCV. Plaintiff alleged that at that time defendants did not advise him that he tested positive for HCV, nor did they monitor or provide treatment for the disease. [Doc. # 82, para 87.]

Plaintiff further alleged that defendants have never advised him that he has HCV. [Doc. # 82, para 32.] Plaintiff also claimed that "[f]rom June 7, 1995 until March 6, 2000, Defendants did not attempt to monitor [plaintiff's] HCV" and that "[f]rom June 7, 1995 to the present, Defendants have not treated or referred him to a medical specialist for treatment of HCV . . . ." [*Id.*]

On July 17, 2001, plaintiff filed his motion for leave to file his third amended complaint. [Doc. # 106.] The proposed third amended complaint attached to plaintiff's motion incorporates all of the factual allegations submitted in the Second Amended Complaint. The motion seeks to add John Armstrong in his official capacity as the Commissioner of DOC, as he is "responsible for the safe custody of all inmates in the [DOC'] custody and the provision of health care services to them consistent with the requirements of the Eighth Amendment." [Doc. # 107, Exhibit A, at para. 9.]

---

1. The court notes that discovery in this case has been difficult and time-consuming, requiring a multitude of status conferences. Since counsel was appointed, plaintiff has filed three motions to compel [Docs. ## 68, 99, 105], and five motions for extension of time [Docs. ## 71, 80, 81, 90, 102]. The vast majority of these motions were required by defendants' delay in producing responses to discovery requests. Regardless of the justifications for the delay, the court believes that this failure to produce material in a timely manner contributed to the fact that plaintiff filed the instant motion at this late date.

More directly related to plaintiff's HCV claim, the complaint seeks to add Dr. Edward Pesanti as a defendant in both his official and individual capacities. Plaintiff alleges that Dr. Pesanti is "responsible for the supervision of health care delivery to the [DOC] inmates, which includes the facilities where [plaintiff] has been incarcerated, and for the delivery of health care services consistent with the Eighth Amendment and the Equal Protection clause of the Fourteenth Amendment." [Doc. # 107, Exhibit A, at para. 8.] Dr. Pesanti is also the author of the July 7, 2000 DOC policy governing the treatment of HCV in all DOC facilities.[2] Plaintiff claims that the "development of this policy [has] had a direct causal impact on the care [he] received." [Doc. # 107, Exhibit A, at para. 94.]

Finally, plaintiff's complaint seeks leave to add an additional cause of action under the Fourteenth Amendment. Plaintiff alleges that his rights under the equal protection clause of the Fourteenth Amendment have been violated by the DOC's policy on HCV treatment because, as an inmate, he is not receiving the same type of care as a similarly situated non-inmate in the State's custody. [Doc. # 107, Exhibit A, at para. 96–97.]

## II. HCV Related Claims

Plaintiff's Third Amended Complaint appears to allege three distinct causes of action with respect to the DOC HCV policy. First, the complaint alleges that defendants' failure to advise plaintiff of his HCV status, and the failure to monitor or treat plaintiff's HCV constitutes deliberate indifference to *his* serious medical condition in violation of the Eighth Amendment. The court views this as a claimed violation

of plaintiff's Eighth Amendment rights as an individual.

Second, plaintiff's complaint alleges that DOC's adoption of the July 2000 policy authored by Dr. Pesanti constitutes an Eighth Amendment violation in and of itself. Plaintiff claims that the adoption of this policy "sets unsupportably high thresholds for the eligibility for screening for treatment of Hepatitis C. This arbitrary exclusion existed without support from peer reviewed medical literature, and was considerably beyond the range of the generally acceptable standards of care." [Doc. # 107, Exhibit A, at para. 95.] Plaintiff alleges that the decision to exclude inmates with levels of Alanine Aminotransferase below the threshold set in the policy is reckless and deliberately indifferent to his serious medical needs and below accepted standards of medical care. Plaintiff also claims that the policy violates the Eighth Amendment as it deprives inmates in the custody of the State of Connecticut of treatment available to non-inmates in state custody with the same condition. [Doc. # 107, Exhibit A, at para. 97.]

Finally, plaintiff's complaint seeks to add a new cause of action for the violation of his rights under the equal protection clause of the Fourteenth Amendment. The basis for adding this cause of action is that the policy developed by Dr. Pesanti is in "direct conflict with the policies established for individuals in other settings under the control of the State of Connecticut." [Doc. # 107, Exhibit A, at para. 96.]

Defendants object to the inclusion of plaintiff's HCV claims on a variety of grounds. First, defendants argue that plaintiff is required to exhaust all of his

---

**2.** Although there was a question of whether protocols existed prior to the July 2000 policy, defendants have represented that the July 2000 policy is the first formal policy the DOC has adopted on HCV.

HCV claims under the PLRA because those claims were not part of his original action. Defendants also argue that they were not put on notice by the original complaint that plaintiff would be challenging the treatment he received for his HCV infection, including any claims for on-going constitutional violations. Defendants argue that allowing the HCV claims at this late date would severely prejudice their ability to prepare for trial, as the claims challenging the use of the July 2000 protocol question the propriety of the standards for all inmates, not just plaintiff, and would require additional discovery in order to prepare a proper defense. Finally, defendants argue that plaintiff should not be permitted to amend his complaint without further clarification because it refers to all four defendants collectively throughout the pleadings without specifying which cause of action is attributable to which defendant. Defendants request that the court deny the motion to amend, or in the alternative, sever all of plaintiff's HCV claims from the diabetes claim against Dr. Stein.

The court reads plaintiff's last two HCV claims as being based entirely upon DOC's adoption and implementation of the HCV protocol as set forth in the July 2000 policy, and alleges a continuing violation of his rights. The Court has determined that plaintiff's HCV claim against Dr. Stein should be severed from the HCV allegations arising after plaintiff left Cheshire on June 5, 1999, and tried with the other Cheshire claims. As discussed in further detail below, the Court finds it to be in the interest of justice to proceed to trial with plaintiff's deliberate indifference claim against Dr. Stein, relating to the medical care he received while incarcerated at Cheshire. Therefore, all of plaintiff's claims relating to his medical care after leaving Cheshire on June 5, 1999, will be severed and handled separately from the Cheshire claims.

## A. *Plaintiff's Cheshire Claims*

■ Defendants' primary argument against the inclusion of plaintiff's HCV claims against Dr. Stein is that plaintiff is required to exhaust those claims under the PLRA. As discussed above, defendants argue that plaintiff did not incorporate allegations regarding his HCV claim into his complaint until the filing of his Second Amended Complaint [Doc. # 82] in August 2000, well after the enactment of the PLRA. Thus, defendants contend, plaintiff is required to pursue the administrative exhaustion procedure before filing his claim in court. The Court rejects this argument.

The claim that defendants failed to attend to plaintiff's HCV condition while he was at Cheshire relates back to his other claims of deliberate indifference by Dr. Stein to serious medical needs. Plaintiff is not required to exhaust his claim that Dr. Stein's failure to notify him of his HCV status, and his failure to monitor or treat plaintiff's HCV while he was at Cheshire, constituted deliberate indifference to his serious medical needs. Defendants were on notice from plaintiff's original *pro se* complaint that he was claiming that "medical neglect of [his] needs has caused damage to my kidneys, liver, heart, eyes and may have damaged [his] nerve system beyond repair causing diabetes." [Doc. # 2, at 2.] Plaintiff's claim of deliberate indifference is essentially that, for the period of May 25 through June 6, 1995, and from June 14, 1995 through June 5, 1999, Dr. Stein's failure to provide him necessary medical care violated the Eighth Amendment. Although the most serious physical harm plaintiff alleges he suffered resulted from Dr. Stein's failure to treat plaintiff's diabetes and pancreatis, the failure to disclose, monitor or treat plaintiff's HCV status was part of the same conduct and

temporally congruent with his other deliberate indifference claims against Dr. Stein, and fairly encompassed in the *pro se* allegation that "medical neglect ... has caused damage to my ... liver."

The Court finds this allegation, made by a *pro se* plaintiff prior to the PLRA's enactment, sufficient to put defendants on notice that plaintiff's deliberate indifference claim included Dr. Stein's disregard of plaintiff's need for medical care during this period whatever the cause, including his HCV claim against Dr. Stein.[3] *See Jones v. Goord,* 2000 WL 290290, *3 (S.D.N.Y. Mar.20, 2000).[4] As discussed in the court's ruling on defendants' motion for judgment on the pleadings, because plaintiff filed his original complaint before the PLRA's enactment, he is not required to exhaust his administrative remedies for the HCV claims which arose during his incarceration at Cheshire, prior to the enactment of the PLRA. *See Salahuddin v. Mead,* 174 F.3d 271, 275–76 (2d Cir.1999); *Bishop v. Lewis,* 155 F.3d 1094, 1095 (9th Cir.1998); *Wright v. Morris,* 111 F.3d 414, 418 (6th Cir.), *cert. denied,* 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 190 (1997); *Bolton v. Goord,* 992 F.Supp. 604, 624–25 (S.D.N.Y.1998); *Proctor v. Vadlamudi,* 992 F.Supp. 156, 158 (N.D.N.Y.1998); *Cunningham v. Eyman,* 11 F.Supp.2d 969, 975–76 (N.D.Ill.1998).

In addition, the Court finds that, even if plaintiff had not sufficiently pleaded a cause of action relating to the entirety of the medical care he received during this period, it would be in the interest of justice to allow him to try the HCV claim with his other causes of action against Dr. Stein. Plaintiff alleges that defendants failed to notify him that he suffered from HCV, and he represented in the memorandum of law accompanying his motion for leave to file the second amended complaint that plaintiff first became aware in March 1999 that it might have been necessary to amend the complaint. [*See* Doc. # 78, at 4.] Plaintiff stated that the need to amend the complaint "to encompass further acts of deliberate indifference" was "confirmed by the production of documents by Defendants from March 1999 to July 2000." [5] [*Id.*]

To require plaintiff to exhaust claims that arose out of the same series of events as those for which he properly filed suit in court, when plaintiff was allegedly kept in the dark about the existence of a possible HCV cause of action through defendants' own conduct, would unfairly prevent plaintiff from litigating all of his claims against Dr. Stein. Furthermore, to deny plaintiff his opportunity now, six years later, to challenge the medical care he received at Cheshire would reward defendants for their failure to disclose plaintiff's condition

---

3. As the Second Circuit directs, when considering the sufficiency of a *pro se* complaint, this court "must construe it liberally, applying less stringent standards than when a plaintiff is represented." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (citing, *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam)); *Branham v. Meachum,* 77 F.3d 626, 628–29 (2d Cir.1996).

4. In the *Jones* decision the court considered whether notice to potential class members must proceed through the administrative exhaustion process under the PLRA, where the original pro se complaints were filed prior to

the statute's enactment. In making its decision the court looked to Federal Rule of Civil Procedure 15(c) and traditional notions of notice and unfair prejudice and found that the original pleadings provided sufficient notice of a challenge to defendants' policy and therefore related back to the dates of the original complaints.

5. Defendants have not challenged plaintiff's representation that he only became aware of the possible need to amend the complaint in March 1999.

in a timely manner.[6] In the unique circumstances of this case, the Court finds that placing additional impediments to the litigation of plaintiff's deliberate indifference claim against Dr. Stein, where plaintiff alleges as part of his claim that defendants never informed him that he tested positive for HCV and where plaintiff had no control over the disclosure of that information, would constitute manifest injustice.

Finally, the Court finds that justice would not be served by further delay in the litigation of plaintiff's Eighth Amendment claims of deliberate indifference during his incarceration at Cheshire. These claims arose from a series of events in 1995, and plaintiff filed the instant action in February 1996. Dr. Stein's involvement in plaintiff's treatment was limited to the period when plaintiff was housed at Cheshire, which ended in 1999. The facts underlying plaintiff's HCV claim at Cheshire are based on the same course of treatment as his other claims against Dr. Stein, and to the extent the harm plaintiff alleges from his lack of treatment for HCV exacerbated the claimed mistreatment of his diabetes, this information is essential to a complete picture of plaintiff's condition at the time he was under Dr. Stein's care.[7] For this reason, plaintiff's HCV claim, and the facts underlying it, may be relevant to a jury's calculation of potential damages.

After more than five years of litigation, plaintiff's claims relating to his care at Cheshire should be heard. For that same period, Dr. Stein has had the specter of these allegations looming over him and he also deserves to have the outstanding

claims ruled upon. Because the claims against Dr. Stein do not implicate plaintiff's Eighth Amendment claims after he left Cheshire and his claims against the 2000 HCV protocol, there is no significant prejudice to either side in severing plaintiff's post-Cheshire claims from his Cheshire claims. The court has considered the alternative of delaying trial on the Cheshire claims. However, because plaintiff is no longer at Cheshire and his claim is therefore solely one for damages against Dr. Stein, there is no reason to wait to adjudicate these allegations. Because Section 1983 requires personal involvement for liability, Dr. Stein's potential liability ended with the termination of his responsibility for plaintiff's care. Thus, the parties will proceed with the scheduled trial on all of plaintiff's deliberate indifference claims related to the medical care he received while incarcerated at Cheshire.

### B. *Plaintiff's Post–Cheshire Claims*

██ Although the court believes that plaintiff's claims relating to the medical care he received while housed at Cheshire must proceed to trial, it also believes that his claims relating to the care he received for HCV after leaving Cheshire, including new claims contained in the amended complaint, raise significant issues which deserve to be litigated. The Court finds that it would not be in the interests of either party to litigate the post-Cheshire claims during the scheduled trial. The court recognizes several difficulties that the parties will encounter in preparing these claims for trial. In particular, the addition of new parties and a new cause of action require

---

6. The court notes that plaintiff would have no recourse for a new HCV claim based on Dr. Stein's conduct in June 1995, unless the statute of limitations were tolled.

7. Plaintiff's complaint alleges that the "high rate of HCV in diabetics has led some medical experts to believe that the virus has effects on the immune system or pancreas causing diabetes in some people." [Doc. # 82, at para. 19.] Whether or not the jury finds this allegation credible, it is an allegation that plaintiff's diabetes and HCV status may be intimately, and possibly causally, related.

additional discovery on both sides, and the scope of the post-Cheshire claims could potentially be limited by dispositive motions.

The post-Cheshire claims may necessitate further amendment of plaintiff's complaint and will require the court to issue a separate scheduling order. After reviewing the documents provided by the parties, the court has several concerns that must be addressed by plaintiff in proceeding with the post-Cheshire claims. Plaintiff has failed to name specific defendants whom he alleges are personally responsible for any claimed deliberate indifference while he was housed at Carl Robinson. Plaintiff's Third Amended Complaint does not include any post-Cheshire individual capacity defendants or allegations of personal involvement in or responsibility for his care by medical personnel.

In addition, plaintiff has not specifically alleged that the application of the July 2000 protocol affected the treatment he has received for HCV, which may affect plaintiff's ability to meet the applicable standing requirements. Plaintiff has not alleged what treatment he believes should have been provided, including when that treatment should have been provided, to support a claim that failure to provide that level of care allegedly constitutes deliberate indifference to his serious medical needs.

Finally, the court notes that plaintiff's claims concerning the adoption and implementation of the July 2000 protocol allege constitutional violations much broader in scope than the claims of deliberate indifference that are specific to the care he received. In particular, plaintiff's equal protection and deliberate indifference claims regarding the policy appear to challenge the use of the protocol generally and could affect the DOC's use of those standards to treat other inmates. For these reasons, both parties should be afforded the opportunity to thoroughly prepare the post-Cheshire claims for trial, including further discovery and any pretrial motions that may be necessary for the claims to be fully and fairly litigated.

### Conclusion

**For the reasons discussed above, defendants' motion for reconsideration is GRANTED.** Upon reconsideration, the court affirms its prior ruling that plaintiff was not required to exhaust his HCV claims based upon treatment he received while at Cheshire. The Court expresses no opinion at this time on whether plaintiff must exhaust any post-Cheshire claims he may have based on the HCV treatment he received.

**Plaintiff's motion for leave to file a third amended complaint is GRANTED.** [Doc. # 106.] The parties will proceed with the scheduled trial on all of plaintiff's claims regarding the medical care he received at Cheshire. Plaintiff's remaining claims, including any claims he may have against Commissioner Armstrong or Dr. Pesanti, are severed from the claims proceeding to trial, and will be the subject of further orders of the court.

Aug. 1, 2001.