Diane WORD, Plaintiff,

v.

Alan J. CROCE, Chairman–Commissioner, New York State Commission of Correction, and Glenn S. Goord, Commissioner, New York State Department of Correctional Services, Defendants.

No. 00 CIV. 6496(SAS).

United States District Court, S.D. New York.

April 27, 2001.

Diane Word, Bedford Hills Correctional Facility, Bedford Hills, for Plaintiff (Pro Se).

Michele N. Beier, Assistant Attorney General, New York, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff, proceeding pro se, brings this action under 42 U.S.C. § 1983 alleging various violations of her civil rights. Specifically, plaintiff claims that her confinement to tuberculin hold ("TB hold") at the Bedford Hills Correctional Facility ("Bedford Hills") and the denial of a "Therapeutic High Fiber Bland Non–Animal Non–Wheat Medical Diet" by that institution violates her constitutional rights under the Fourth Amendment.[1] See Amended Complaint ("Cmplt") ¶ 5. Plaintiff also claims that the policy of the New York State Department of Correctional Services ("NYSDOCS") of permitting incoming mail to be inspected outside the presence of inmates is unconstitutional. See id. ¶ 3. Lastly, plaintiff claims that she has been denied medical and dental services. See id. ¶ 5(a). Plaintiff seeks money damages and injunctive relief in the form of a preliminary injunction releasing her from TB hold and placing her on the requested diet. Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, defendants' motion is granted and plaintiff's Amended Complaint is dismissed in its entirety. Furthermore, because plaintiff's case is dismissed, her request for preliminary injunctive relief is denied as moot. See Parker v. Corbisiero, 825 F.Supp. 49, 58 (S.D.N.Y.1993) ("since we have dismissed plaintiff's case, plaintiff's motion for a preliminary injunction is rendered moot").

## I. FACTS

### A. Tuberculosis Testing and Plaintiff's Special Dietary Requests

Plaintiff was incarcerated in March of 1996, and was originally housed at the Bedford Hills facility. See Word v. Wright, 98–CV–220A(H) (Report and Recommendation) (W.D.N.Y. Sept. 15, 1999) (also referred to as the "Western District case") at 3, attached as Exhibit I to the Affirmation of Michele N. Beier, attorney for defendants, dated March 9, 2001 ("Beier Aff."). Plaintiff was transferred from Bedford Hills to the Albion Correctional Facility ("Albion") in July 1996. See id. Prior to that transfer, plaintiff was possibly exposed to active Tuberculosis ("TB") at the Bedford Hills facility and while on a bus from Rikers Island to Bedford Hills. See Affidavit of Susan Lewis, a NYSDOCS Regional Infection Control Nurse, dated September 9, 1998 ("Lewis Aff."), attached as Exhibit D to the Beier Affirmation, ¶ 7. Upon admission to Bedford Hills and again upon admission to Albion, plaintiff refused all medical testing, including the purified protein derivative ("PPD") test used to detect latent TB infection. See Word v. Wright at 3.

The PPD test is used to detect TB infection and is required for all inmates whether or not the inmates exhibit symptoms of

---

1. While plaintiff relies on the Fourth Amendment, her claims are more appropriately brought under the Eighth Amendment as she is incarcerated. Reading her pro se papers liberally, as this Court must do, see Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff's claims will be analyzed under the Eighth Amendment.

TB. *See* Affidavit of Lori Goldstein, M.D., Facility Health Services Director at Bedford Hills, dated March 12, 2001 ("Goldstein Aff."), ¶ 10. The PPD test is the only means available to determine whether a person is infected before she develops active, contagious TB. *See id.* If TB is detected at this early stage, efforts can be taken to prevent it from developing into active TB. *See id.* Although chest x-rays cannot detect latent TB infection, an inmate who refuses PPD testing can be released from TB hold if she has three negative chest X-rays within one year and shows no symptoms of TB disease. *See id.* ¶ 11. Plaintiff, who has refused both PPD testing and chest x-rays, is housed in the Special Housing Unit at Bedford Hills on TB hold. *See id.* ¶ 6. As such, plaintiff is kept in a locked cell for 23 hours per day and is given one hour per day for exercise, three showers per week, and legal visits only. *See* Cmplt ¶ 4(b).

Plaintiff also insists that her medical conditions require her to be placed on a "Therapeutic High Fiber Bland Non–Animal Non–Wheat Medical Diet" consisting, in part, of whole beans, whole peas, roasted nuts, whole potatoes, whole grain rice, cooked and fresh vegetables, fresh fruits, whole grain corn cereal, and soybean milk. *See id.* ¶ 5. This special diet is allegedly necessitated by plaintiff's irritable bowel syndrome and "burning inside of [her] stomach." *See id.* According to Dr. Goldstein, plaintiff is on a high-fiber diet and the diet she insists on is not medically indicated. *See* Goldstein Aff. ¶¶ 16–19 ("[A]s there are no objective findings of celiac disease, and as Ms. Word is fully uncooperative with basic diagnostic tests, there is no medical reason either to place Ms. Word on a wheat-free diet or to refer

her to a gastroenterologist.").[2] *See also* Affidavit of Dolores Lewy, M.D., staff physician at Bedford Hills, dated March 8, 2001 ("Lewy Aff.") ¶¶ 16–17 ("Ms. Word is currently on a high-fiber diet. I see no medical indication for any other diet. If Ms. Word truly had irritable bowel syndrome, she would suffer from constipation and bloating. There is no evidence of either.").

**B. Previous Litigation**

Plaintiff filed a complaint against Lester N. Wright, Associate Commissioner and Chief Medical Officer for NYSDOCS, in the Southern District of New York. In that action, plaintiff claimed an Eighth Amendment violation due to her confinement to TB hold since March, 1996 (first at Bedford Hills, then at Albion) resulting from her refusal to submit to a PPD test or chest x-rays. Plaintiff also claimed that her civil rights were violated by the denial of her request for a vegan-vegetarian diet. Plaintiff was directed to file an amended complaint, and on March 27, 1998, the case was transferred to the Western District of New York.

In the Western District litigation, Magistrate Judge Carol E. Heckman wrote a report and recommendation granting summary judgment to defendant Wright. *See Word v. Wright.* Magistrate Judge Heckman's Report and Recommendation was adopted by Judge Richard J. Arcara who dismissed the case on October 28, 1999. *See* Order of Judge Richard J. Arcara, attached as Exhibit J to the Beier Affirmation. The court found that plaintiff failed to show that a reasonable jury could find in her favor on her claims that NYSDOCS's failure to release her from TB hold and its failure to provide her with a

---

**2.** If plaintiff truly required a wheat-free diet there would be signs of celiac disease (defective digestion and utilization of fats) such as

weight loss, bloating and diarrhea, none of which are present here. *See* Goldstein Aff. ¶ 17.

vegan-vegetarian diet violated her Eighth Amendment rights. *See Word v. Wright* at 8. The court reasoned that the conditions of confinement imposed by NYS-DOC's current TB policy would not constitute cruel and inhumane treatment under the Eighth Amendment.[3] In addition, the court found that defendant satisfied the Eighth Amendment requirement that prisoners be served nutritionally adequate food. *See Word v. Wright* at 8. Accordingly, the court held that plaintiff failed to establish that the diet provided by NYS-DOCS resulted in a serious deprivation of basic human needs or that defendant disregarded an excessive risk to plaintiff's health or safety. *See id.* Summary judgment was granted in defendant's favor and all of plaintiff's claims were dismissed. *See id.* at 12.

## II. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law[,]' [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir.2001). "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000) (quoting *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505). However, the non-moving

---

**3.** Under the *1991* NYSDOCS' TB policy, inmates who refused the PPD test were placed in "medical keeplock" where they remained in their cells at all times except for one ten-minute shower per week and scheduled legal visits. *See Word v. Wright* at 2. In response to two cases finding that the 1991 NYSDOCS policy violated the Eighth Amendment, the NYSDOCS amended its TB control program. *See id.* The new program allows for release from TB hold if an inmate has three negative chest x-rays within one year and shows no symptoms of TB. *See id.* at 3. In addition, the new program allows inmates one hour of exercise per day, three showers per week, legal visits and library privileges. *See id.* Many courts have upheld the segregation of inmates who refuse to cooperate with the TB control program. *See, e.g., Giles v. Coughlin,* No. 95 Civ. 3033, 1997 WL 433437, at *9

(S.D.N.Y. Aug.1, 1997) (current TB hold policy did not violate the Constitution); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997) (upholding policy requiring prisoner to accept preventive TB medicine or be isolated); *United States ex rel. Willis v. Detella,* No. 95 C 5941, 1996 WL 100012, at *2 (N.D.Ill. Mar.1, 1996) (regulations for administering TB tests and disciplining those inmates who refuse to be screened is rationally related to prison's interest in maintaining the health of its population); *Karolis v. New Jersey,* 935 F.Supp. 523, 531 (D.N.J.1996) ("federal courts should not second-guess prison regulations that might impinge on an inmates' constitutional rights when the regulations are reasonably related to penological interests" such as preventing the spread of TB).

party may not "rest upon ... mere allegations or denials." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir.2000). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir.1999), *cert. denied*, 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998) ("If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal quotation marks, citations, and alterations omitted).

### B. Collateral Estoppel Bars Plaintiff's TB Hold Claim

▮▮▮ Plaintiff's claim regarding NYS-DOCS TB hold policy is precluded by the final judgment addressing the same issue in *Word v. Wright*. The collateral estoppel doctrine serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or [her] privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). This doctrine is fully applicable to civil rights claims asserted under 42 U.S.C. § 1983. *See Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

▮▮▮ The law of collateral estoppel (issue preclusion) forecloses a second litigation of an issue if: (1) the issue sought to be precluded is identical to the issue involved in a prior action; (2) the issue was actually litigated; (3) there was a final determination on the merits of that issue in the prior proceeding which was necessary to that judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue. *See*

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir.1992); *Davis v. Halpern*, 813 F.2d 37, 39 (2d Cir.1987).

▮▮▮ The instant case involves an issue thoroughly litigated in the Western District, namely the legitimacy of TB hold in response to an inmate's failure to submit to the PPD test or chest x-rays. In both cases, plaintiff claimed that the policy of keeping her in TB hold violated her constitutional rights. After giving plaintiff a full and fair opportunity to litigate the issue, the Western District court decided the issue against plaintiff.

Although the Western District case was brought while plaintiff was incarcerated at Albion, the issue pertaining to TB hold remains the same. Plaintiff raises no distinguishing facts or circumstances to differentiate her complaint at Albion from her complaint at Bedford Hills. It is irrelevant that the defendants in this action are different than those in the Western District action. Plaintiff was a party to both actions and it is thus appropriate to invoke issue preclusion against her. *See Parklane Hosiery*, 439 U.S. at 332, 99 S.Ct. 645; *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 328, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). As the issue of TB hold was fully litigated and decided in the Western District case, collateral estoppel bars relitigation of this issue. To hold otherwise would be unfair to the defendants and would defeat the purposes of finality and repose underlying the doctrine of issue preclusion. Accordingly, plaintiff's TB hold claim is dismissed on collateral estoppel grounds.

### C. Denial of Plaintiff's Requested Special Diet Does Not Implicate the Eighth Amendment

▮▮▮ While a strong argument could be made in favor of dismissing plaintiff's dietary request claim on the same collater-

al estoppel grounds used to dismiss her TB hold claim, it is necessary to re-visit this claim in light of a potential change in medical circumstances. A prisoner may recover under section 1983 for an Eighth Amendment violation if she is able to show that the defendants, acting under color of state law, exhibited deliberate indifference to the prisoner's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To prove deliberate indifference, an objective and subjective test must both be satisfied. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). The objective test is satisfied by showing "a condition of urgency," capable of producing "death, degeneration, or extreme pain" such that the alleged deprivation of medical assistance is sufficiently serious. *See id.* (internal quotation marks and citation omitted). The subjective test is satisfied by showing that defendants acted with a state of mind akin to criminal recklessness—that the defendants knew of and disregarded a grave risk to the prisoner's health or safety. *See id.*

██ Prisons have an affirmative duty to provide their inmates with nutritionally adequate food. *See French v. Owens,* 777 F.2d 1250, 1255 (7th Cir.1985). But assuming a diet's nutritional adequacy, prison officials have the discretion to control its contents. *See Divers v. Department of Corr.,* 921 F.2d 191, 194 (8th Cir.1990). "[A]bsent religious or medical[ly] peculiar circumstances, a prisoner does not have a right to a specialized diet while incarcerated, vegetarian or otherwise." *Maulding v. Peters,* No. 92 C. 2518, 1995 WL 461914, at *5 (N.D.Ill. Aug.2, 1995).

██ Here, plaintiff does not claim that the requested diet is needed for reli-

gious reasons. *See Bass v. Coughlin,* 976 F.2d 98, 99 (2d Cir.1992) (per curiam) ("prison officials must provide a prisoner a diet that is consistent with [her] religious scruples"). Nor is the requested diet medically indicated, *see supra* Part I.A.. Plaintiff's self-diagnosis of irritable bowel syndrome is insufficient to support a medical condition requiring a special diet. Even if true, plaintiff is already receiving a high fiber diet.[4] Because there is no medical or religious reason for the precise diet requested, *see* Goldstein Aff. ¶ 16, defendants' refusal to provide such a diet does not constitute deliberate indifference to plaintiff's medical needs. *See Ramsey v. Coughlin,* 1 F.Supp.2d 198, 205 (W.D.N.Y. 1998) ("[T]he undisputed facts do not establish any medical reason for the vegetarian diet, and thus Defendants' refusal to provide a diet which did not conform to DOCS policies does not constitute deliberate indifference to Plaintiff's medical needs."). Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu. *See Maulding,* 1995 WL 461914, at *5 (prisoner's "deliberate (non-religious) choice not to eat all the food presented to [her] does not implicate infringement of a constitutional right."). Accordingly, plaintiff's denial of special diet claim is dismissed.

### D. The Eleventh Amendment Bars Plaintiff's Claims Against Defendants in Their Official Capacities

██ In her Amended Complaint, plaintiff seeks money damages against defendants whom she is suing in their official capacities. *See, e.g.,* Cmplt ¶¶ 3, 4(a)-(d), 5. As such, her claims are barred by the Eleventh Amendment. It is well-settled

---

4. Physicians at Albion determined that the only special diet medically indicated for plain-

tiff is a high-fiber diet. *See* Lewy Aff. ¶ 16.

that, absent waiver or consent, the Eleventh Amendment of the United States Constitution bars suits for money damages against a state or state officials in their official capacity. *See Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

 Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent...." *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See also Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Brandon v. Holt,* 469 U.S. 464, 472 n. 21, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As such, a suit for damages against a state official acting in his official capacity is no different than a suit against the state itself, and is therefore barred by the Eleventh Amendment. *See Graham,* 473 U.S. at 169, 105 S.Ct. 3099; *Pennhurst,* 465 U.S. at 101–02, 104 S.Ct. 900. The reason is simple—any recovery would come from the state treasury. *See Allah v. Commissioner of Dep't of Corr. Servs.,* 448 F.Supp. 1123, 1125 (N.D.N.Y.1978). Accordingly, Eleventh Amendment immunity serves as an alternative basis by which to dismiss plaintiff's claims.

### E. Plaintiff's Allegations Do Not Show Defendants' Personal Involvement in the Alleged Constitutional Deprivations

 Plaintiff named Alan Croce, Chairman of the New York State Commission of Correction,[5] and Glenn S. Goord, Commissioner of the New York State Department of Correctional Services, as defendants. However, plaintiff has no claim against these defendants as they were not personally involved in the actions complained of. "Where damages are sought in a Section 1983 action, the defendant must be responsible for the alleged constitutional deprivation: '[T]he general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'" *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.1973)). *See also McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

 A supervisory official may be personally involved in a section 1983 violation in several ways: (1) the official may have directly participated in the violation; (2) the official, after learning of the violation, may have failed to remedy the wrong; (3) the official may have created a policy or custom under which unconstitutional practices occurred; (4) the official may have been grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official may have exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d

**5.** The New York State Commission of Correction is constitutionally established to have the non-exclusive power of visitation of "all institutions used for the detention of sane adults charged with or convicted of crime." New York Constitution, Art. XVII, §§ 5,6. Its organization, function and powers are set forth in Article 3 of the New York Correction Law. The Commission's functions and powers include making recommendations on how to improve correctional administration and the delivery of services in correctional facilities, visiting and inspecting facilities, and establishing standards. As such, the Commission is quasi-legislative in nature.

Cir.1995); *see also Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir.1986).

▆▆▆▆▆ Here, plaintiff has failed to allege any facts which would support the imposition of liability on any of the foregoing theories. Plaintiff has not alleged any direct involvement on the part of defendants. Although plaintiff alleges that defendants have knowledge of various alleged constitutional violations, she does not offer any specific facts or examples upon which she bases this conclusory allegation. *See Smith v. Keane*, No. 96 Civ. 1269, 1998 WL 146225, at *6 (S.D.N.Y. Mar.25, 1998) (dismissing claims against supervisor where conclusory allegations in complaint lacked any particularized facts showing supervisor's personal involvement in alleged constitutional violations). More importantly, plaintiff does not allege that either defendant helped create NYSDOCS' current TB policy. Even if she could so allege, there is no showing that *unconstitutional* practices resulted from that policy. It is not enough to merely name high-ranking officials and ascribe to them the alleged unconstitutional activity. *See Odom v. Sielaff*, No. CV–920571, 1995 WL 625786, at *6 (E.D.N.Y. Oct.12, 1995) (summary judgment granted where named defendants were high ranking officials who had no personal involvement in the alleged Eighth Amendment violations). Lack of personal involvement by defendants is therefore an alternative ground for dismissal.

### F. Plaintiff's Remaining Claims Are Without Merit

### 1. Inspection of Prison Mail Outside of Plaintiff's Presence

▆▆▆▆▆ Plaintiff complains that NYS-DOCS officials open and inspect her mail outside of her presence. *See* Cmplt ¶ 3. However, plaintiff fails to distinguish between legal mail and ordinary mail.

"[T]here is no question that prison officials may open incoming mail to ensure that no contraband is contained in the correspondence ." *Webster v. Mann*, 917 F.Supp. 185, 187 (W.D.N.Y.1996) (citing *Wolff v. McDonnell*, 418 U.S. 539, 574–77, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). *See also Cruz v. Jackson*, No. 94 Civ. 2600, 1997 WL 45348, at *9 (S.D.N.Y. Feb.5, 1997) ("legitimate security and penological interests have been held to outweigh a prisoner's interest in mail"). Accordingly, "[t]he opening of mail, whether or not in plaintiff's presence, is permitted as long as the materials are not clearly legal mail." *Foy v. Owens*, No. 85–4657, 1986 WL 3766, at *1 (E.D.Pa. Mar.19, 1986) (citing *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir.1974) (prison has legitimate security interest in opening incoming mail for the purpose of checking for weapons and drugs)).

▆▆▆▆▆ While prison officials may open ordinary mail outside of an inmates' presence, the rule is different for legal mail: "It is accepted that a prisoner must be present when, for whatever reason, legal mail (clearly marked as such) is opened by prison officials." *Standley v. Lyder*, No. 99 Civ. 4711, 2001 WL 225035, at *2 (S.D.N.Y. Mar.7, 2001); *see also Bach*, 504 F.2d at 1102 ("plaintiff is entitled to be present during the opening of legal mail addressed to him in prison").

▆▆▆▆▆ Plaintiff's Amended Complaint does not specify whether she is objecting to the opening of legal mail or ordinary mail outside of her presence. If plaintiff is complaining of how nonlegal mail is treated, she does not have a claim. If, however, it is the treatment of legal mail or of all mail, including legal mail, to which plaintiff objects, she may very well have a claim, albeit not against these defendants. Plaintiff would be well advised to bring a separate action against those prison officials

responsible for opening legal mail at Bedford Hills if she wishes to pursue injunctive relief. Amendment of the instant complaint would be futile, however, given the myriad of problems in imposing liability against the named defendants. Given this futility, amendment will not be permitted. *See Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (whether to grant leave to amend is a decision within the discretion of the district court).

## 2. Denial of Medical and Dental Services

Plaintiff complains that she is being denied medical and dental services, to wit, specialists in gastroenterology and orthodontics. *See* Cmplt ¶ 5(a). Plaintiff claims that the low-fiber refined-food animal-based diet she is currently receiving has caused her irritable bowel syndrome and "burning inside of [her] stomach." *See id.* ¶ 5. Plaintiff also requests dental care for her fillings and orthodontic braces for her teeth which are "currently decayed and crooked." *See id.*

▮▮▮ There is no evidence that the high-fiber diet plaintiff is currently receiving has in any way contributed to her medical or dental problems. Nor is there any evidence that defendants have otherwise been deliberately indifferent to plaintiff's medical and dental needs. Plaintiff has refused to submit to blood tests which would indicate irritable bowel syndrome. *See* Lewy Aff. ¶ 17. Plaintiff has also refused to submit to a rectal examination. *See id.* Additionally, while plaintiff complains of various food allergies which may be contributing to her stomach problems, she has refused to undergo allergy testing. *See* Goldstein Aff. ¶ 20. The minimal physical examinations which plaintiff has

permitted medical staff to perform do not indicate any serious gastrointestinal problems. *See id.* ¶ 18. Because plaintiff is uncooperative with basic diagnostic tests and does not exhibit any symptoms of a severe gastrointestinal problem, there is no medical reason to refer her to a gastroenterologist. Accordingly, the refusal to do so does not constitute deliberate indifference to plaintiff's medical needs.

▮▮▮ With regard to plaintiff's dental complaints, the Second Circuit has held that "ordinarily, a tooth cavity is not a serious medical condition." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir.2000). The same can be said for crooked teeth which, while aesthetically displeasing, are not a serious dental problem. *See* Affidavit of Seymour Kramer, Bedford Hills' Dental Director ("Kramer Aff.") ¶ 14. While the dentists at Bedford Hills are willing and capable of filling plaintiff's dental cavities, they cannot do so without proper diagnostic testing such as dental x-rays. *See id.* ¶ 7. Without x-rays, the proper course of treatment, such as extraction, filling or root canal, cannot be determined.[6] *See id.* ¶ 9. In addition, Dr. Kramer has opined that there is no valid reason to replace plaintiff's amalgam fillings and that braces are not indicated for a woman who is nearly fifty years old. *See id.* ¶¶ 11, 12. Again, it is plaintiff's uncooperativeness that has led to her dental problems, not defendants' deliberate indifference to her dental needs.

## III. CONCLUSION

In sum, most of plaintiff's complaints can be resolved with a modicum of cooperation on her part. Plaintiff could be released from TB hold within one year if

---

**6.** A dental hygienist has cleaned plaintiff's teeth which is the only treatment that can be done without x-rays. *See* Kramer Aff. ¶ 14.

she submitted to three chest x-rays. Similarly, her digestive and dental problems might be ameliorated if she would submit to basic diagnostic tests. Plaintiff cannot expect a prison to bend its rules to accommodate her idiosyncracies, namely the refusal to submit to x-rays and peculiar dietary preferences. Aside from her allegation regarding the opening of mail, this is precisely what plaintiff is asking Bedford Hills to do. Because this Court will not countenance such a request, plaintiff's complaint is dismissed without prejudice to her filing an appropriate complaint regarding the opening of her legal mail. The Clerk of the Court is directed to close this case.

SO ORDERED: