**Diane WORD, Plaintiff,**

v.

**Alan CROCE, Chairman–Commissioner, New York State Commission of Correction, Glenn S. Goord, Commissioner, New York State Department of Correctional Services, Defendants.**

**No. 01 CIV. 9614 LTS DFE.**

United States District Court,
S.D. New York.

Nov. 8, 2002.

Ms. Diane Word, Bedford Hills, NY, Plaintiff Pro Se.

Elliot Spitzer, Attorney General of the State of New York By Barbara K. Hathaway, Esq., Assistant Attorney General, New York, NY, for Defendants.

OPINION AND ORDER

SWAIN, District Judge.

Plaintiff Diane Word brings this action against Defendants Alan Croce, Chairman–Commissioner of the New York State Commission of Correction, and Glenn S. Goord, Commissioner of the New York State Department of Correctional Services, both personally and in their official capacities, pursuant to 42 U.S.C. section 1983 ("Section 1983"). Plaintiff challenges her placement on "TB Hold" for her refusal to take a tuberculosis test or submit to chest x-rays, alleging that Defendants violated her federal civil rights. Plaintiff also challenges the handling of her diet, mail and medical and dental care.

The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331.

Before the Court are Plaintiff's request for a preliminary injunction and the motion of Defendants, brought pursuant to Rules 12(b)(1)[1] and (6) of the Federal Rules of Civil Procedure, to dismiss the complaint. For the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiff's request for a preliminary injunction is denied as moot.

### FACTUAL BACKGROUND

The facts as set forth below are taken from factual findings made in prior litigation and the Plaintiff's complaint.

*Prior History*

In March of 1996, Plaintiff was incarcerated at the Bedford Hills Correctional Facility. *See* Report and Recommendation of Carol E. Heckman, *Word v. Wright,* slip op. 98 Cv 220A (H) (W.D.N.Y. Sept. 15,

1999) ("*Word I*") (Ex. I to the Affidavit of Barbara K. Hathaway, sworn to January 17, 2002 ("Hathaway Aff.")). In July of 1996, Plaintiff was transferred to the Albion Correctional Facility. *Id.* It appears that, prior to the transfer, Plaintiff was exposed to tuberculosis at the Bedford Hills facility. *See Word v. Croce,* 169 F.Supp.2d 219, 222 (S.D.N.Y.2001) ("*Word II*"). When Plaintiff was admitted to Bedford Hills Correctional Facility and Albion Correctional Facility, she refused to undergo medical tests, including a test used to detect latent tuberculosis infection called the purified protein derivative test ("PPD"). *Id.*

All inmates in the New York State Correctional system are required to take the PPD test. *Id.* Inmates who refuse to take a PPD test and who refuse other preventative measures are placed on "TB Hold." *Word I,* slip op. at 3. Inmates on TB Hold receive a monthly medical exam and a chest x-ray every six months. Inmates who are found to have no tuberculosis symptoms and have had 3 negative chest x-rays may be released from TB Hold after one year. *Id.* Because Plaintiff has refused both PPD testing and chest x-rays, she has been kept in the Special Housing Unit at Bedford Hills on TB Hold. She is kept in a locked cell for 23 hours a day, has one hour a day for exercise and may have only legal visits. *Id.* Plaintiff has been on TB Hold for five and one-half years.

*Prior Litigation*

On April 29, 1997 Plaintiff filed an action in the New York State Supreme Court against Commissioner Glenn S. Goord, seeking release from TB Hold at the Albion Correctional facility, where she was then incarcerated. *See Word I* at 5.

---

**1.** Defendants have not argued a basis for dismissal under Fed.R.Civ.P. 12(b)(1). Accordingly, the Court treats their motion as made under Fed.R.Civ.P. 12(b)(6).

On August 8, 1997, the action was dismissed without opinion. *Id.* On November 6, 1997, Plaintiff filed a petition for a writ of habeas corpus in state court. *Id.* The petition was denied without opinion. *Id.* Subsequently, Plaintiff filed an action for preliminary injunctive relief in the Southern District of New York. *Id.* at 1. On March 27, 1998, the case was transferred to the Western District of New York. *Id.* In that action, Plaintiff contended that, by continuing to keep her on TB Hold and by refusing her requests for a vegan-vegetarian diet, Defendant Lester Wright had violated her First Amendment right to petition the government for redress of grievances, and her Fourth, Eighth and Fourteenth Amendment rights under the United States Constitution. *See* Amended Complaint, (Hathaway Aff. Ex. C). Plaintiff's motion for a preliminary injunction was denied, as was her motion for reconsideration of the order denying her motion for a preliminary injunction. *See* Exs. F, G and H to the Hathaway Aff. Defendant's motion for summary judgment was granted. *See id.,* Exs. I and J to the Hathaway Aff. Plaintiff filed motions for reconsideration on July 12, 2000 and September 19, 2000. The District Court denied the motions. Exs. K and L to the Hathaway Aff.

After Plaintiff was transferred to the Bedford Hills Correctional Facility, she filed an action in the Southern District of New York seeking a preliminary injunction challenging her placement on TB Hold and the policies of NYDOCS permitting her mail to be inspected. In addition, Plaintiff claimed that she was being denied her requested diet and certain medical and dental services. Defendants opposed the motion for a preliminary injunction and moved for summary judgment. The District Court granted summary judgment for Defendants and denied Plaintiff's request for a preliminary injunction. *See Word II.* Plaintiff moved for reconsideration, which

motion was denied. *Word v. Croce,* slip op. No. 00 Civ. 6496(SAS) 2001 WL 755394(S.D.N.Y. July 5, 2001) (*"Word III"* ) (Hathaway Aff. Ex. R).

In *Word II,* the District Court determined that Plaintiff's claim concerning the TB Hold was barred by collateral estoppel, because the issue had been fully litigated in Plaintiff's prior action in the Western District of New York. *Word II,* 169 F.Supp.2d at 225. The District Court also dismissed Plaintiff's claims concerning her medical treatment, diet and the opening of her mail. In so doing, the District Court found that Plaintiff had not claimed that her diet was required by her religion and that there was no medical reason for a special diet. *Id.* at 226 and 227–228. The District Court also dismissed plaintiff's claims concerning her medical and dental treatment, finding no deliberate indifference to her medical needs. *Id.* at 229.

*Plaintiff's Current Allegations*

Plaintiff brings this action, her fifth one arising from the same factual circumstances, pursuant to 42 U.S.C. section 1983, alleging that her constitutional rights have been violated in the course of her detention.

Alleging violations of the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States, Plaintiff contends that correction officers unlawfully open her mail, record the amount of cash, checks or money orders received and record any items received by Plaintiff. Complaint ¶ 3.

Citing the First, Eighth and Fourteenth Amendments, Plaintiff contends that Defendants have been indifferent to her objections, based on her religious beliefs, to being placed on TB Hold, to performing PPD tests and chest x-rays; and that Defendants have failed to provide medical attention for her allergies and have been indifferent to her objections to an animal

based diet. *Id.* ¶ 4. Plaintiff contends that she has no clinical symptoms of tuberculosis. *Id.* ¶ 4(a). Plaintiff asserts that Defendants could use alternative measures, such a physical examination and counseling by the facility health unit, to allay the tuberculosis concerns. *Id.*

Plaintiff asserts that the TB Hold policy is not an accepted medical practice in any of the other correctional facilities in the United States and that it is not an effective means of managing tuberculosis. *Id.* (citing *Reynolds v. Goord,* 103 F.Supp.2d 316 (S.D.N.Y.2000)). Further, Plaintiff asserts that the five and one-half years she has been on TB Hold exceeds the one-year limitation Plaintiff contends is the maximum amount of time an inmate may be placed on TB Hold. *Id.* ¶ 4(d).

Plaintiff further contends that Defendants have failed to recognize her objections, based upon her religious beliefs, to the non-vegetarian diet provided to her. *Id.* ¶ 5. Plaintiff contends that Defendants have shown deliberate indifference to her medical needs because they have provided a low-fiber diet including processed and animal-based food which, Plaintiff asserts, is capable of causing serious risk of death and degeneration in extreme pain from "mad cow disease." *Id.* 5(a).

Citing the First, Eighth and Fourteenth Amendments, Plaintiff further contends that Defendants are deliberately indifferent to the medical and dental treatment she receives from the prison medical staff. *Id.* ¶ 6. Plaintiff contends that Defendants have not made available to her the least intrusive and invasive medical and dental procedures provided by the Medicare and Medicaid Health Services Program. *Id.*

## *DISCUSSION*

A complaint should not be dismissed under Rule 12(b)(6) unless it " 'appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The factual allegations set forth in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). The issue before the Court " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In addition, allegations of a *pro se* complainant are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

*Res Judicata*

Although *res judicata* is usually plead in an answer, a Rule 12(b)(6) dismissal on the basis of the doctrine is appropriate when it is clear, from the complaint and from matters of which the court takes judicial notice, that plaintiff's claims are barred as a matter of law. *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992); *see also, Cowan v. Ernest Codelia, P.C.,* 149 F.Supp.2d 67, 74 (S.D.N.Y.2001); *Strassberg v. New York Hotel & Motel Trades Council, Local 6,* 99 Civ. 10150(KMW), 2001 WL 103427 (S.D.N.Y. Feb.07, 2001). Under the doctrine of *res judicata,* "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Department of Corrections,* 214 F.3d 275, 284–85 (2d Cir.), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000) (citing *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66

L.Ed.2d 308 (1980) and *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994)). "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Id.* (citing *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir.1983) (citations omitted)). In order to establish the defense of *res judicata*, a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Allen*, 449 U.S. at 94, 101 S.Ct. 411; *Burgos*, 14 F.3d at 789; *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345–46 (2d Cir.1995).

*Whether the Previous Action was Adjudicated on the Merits*

In *Word II*, Plaintiff brought an action pursuant to 42 U.S.C. section 1983 alleging that Defendants Croce and Goord violated her civil rights. Specifically, Plaintiff alleged that her confinement on TB Hold and the denial of a high fiber non-animal non-wheat based diet violated her Fourth Amendment rights. *Id.* 169 F.Supp.2d at 222. She contended that NYDOCS's policy of permitting the inspection of mail outside the presence of inmates was unconstitutional and she claimed that she had been denied certain medical and dental services. *Id.* Plaintiff sought money damages and a preliminary injunction releasing her from TB Hold. Defendants moved for summary judgment. The District Court granted summary judgment on the basis that collateral estoppel barred Plaintiff's TB Hold claim because that claim had been the subject of a final judgment in *Word I*. The District Court also ruled that Plaintiff's request for a special diet did not implicate the Eighth Amendment[2] because Plaintiff had failed to controvert evidence that she was already receiving a high-fiber diet and that the diet she sought to achieve was not medically indicated. Further, the District Court held that the Eleventh Amendment barred Plaintiff's claims against Defendants Croce and Goord in their official capacities, and that Plaintiff's allegations did not show that Defendants Croce and Goord had any personal involvement in Plaintiff's alleged constitutional deprivations. *Word II*, 169 F.Supp.2d at 226–227. Finally, the District Court determined that because Plaintiff had not alleged that prison officials had a policy of opening legal mail outside the presence of inmates, there was no basis for her claim concerning mail. *Id.* at 228.

Subsequent to the District Court's decision granting summary judgment in *Word II*, Plaintiff filed a motion for reconsideration in which she raised arguments that Defendants had failed to grant her a religious exemption from the PPD test and the chest x-rays which were to be administered in connection with the TB Hold program, and that Defendants had failed to provide a religious exemption for a vegetarian diet, all in violation of her rights under the First Amendment to the Constitution. The District Court denied the motion. In so doing, the District Court recognized that Plaintiff had not raised the First Amendment argument in her complaint and held that she could not do so

---

**2.** In *Word II*, the court determined that although the Plaintiff alleged in that case that her Fourth Amendment rights had been violated, her claims were more appropriately brought under the Eighth Amendment because she was incarcerated. Accordingly, the *Word II* Court decided Plaintiff's claims under the Eighth Amendment. *See Word II*, 222 n. 1.

through motion practice. Because Plaintiff had not made allegations in her complaint concerning her First Amendment rights, the District Court declined defendant's request to preclude plaintiff from bringing future religious claims on grounds of collateral estoppel. *See Word III*, at *4–5 and n. 8. The District Court did not address the issue of whether such claims would be barred by *res judicata*.

The foregoing demonstrates that Plaintiff's claims under the Fourth and Eighth Amendments concerning the TB Hold and medical and dental treatment and diet were adjudicated on the merits in prior litigation.

*Whether the Prior Litigation Involved the Plaintiff or Those in Privity*

Plaintiff brought the actions in *Word II* and here. This factor clearly has been established.

*Whether the Claims Were or Could Have Been Raised in the Prior Action.*

The issue with respect to this factor is whether the First Amendment claims Plaintiff seeks to press in this case could have been raised in the prior actions. In determining whether a subsequent action involves the same "claim" or nucleus of operative facts as the first action, courts in the Second Circuit have looked to the standards set forth in the Restatement (Second) of Judgments. *See Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir.2000); *Interoceanica v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir.1997). These standards include whether the underlying facts of the two claims are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations...." restatement (Second) of Judgments § 24(2) (1980).

If the facts underlying the first and second claims are the same, it is irrelevant that the second claim is based on a different legal theory. *See L–Tec Electronics Corp. v. Cougar Electronic Organization, Inc.*, 198 F.3d 85, 88 (2d Cir.1999) ("claims based upon different legal theories are barred provided they arise from the same transaction or occurrence"). For purposes of *res judicata*, it is not relevant that Plaintiff did not claim First Amendment violations in *Word II*, so long as the factual predicate for the First Amendment claim asserted in this case is the same as the factual predicate for the claims in the prior case. For purposes of determining whether an action is barred by *res judicata*, "[i]t is ... enough that the facts essential to the second were [already] present in the first." *Waldman*, 207 F.3d at 111 (internal citation and quotation marks omitted).

Plaintiff's claims in *Word II* and her First Amendment claims in the instant action arise from the same underlying facts relating to the TB Hold, her diet, her medical and dental treatment. The factual allegations in this case concerning the TB Hold, diet, medical and dental care are identical to Plaintiff's allegations in *Word II* and, indeed, those in *Word I*. Because the claims in *Word II* and those in this action arise from the same occurrences and facts, the Court finds that Plaintiff's claims are barred by the doctrine of *res judicata*. It is well-settled that new legal theories, and even the additional of new constitutional theories, are insufficient to overcome the defense of *res judicata* provided the requirements of the defense are met. *See Monahan v. New York City Department of Corrections*, at 290, ("[w]here all requirements are met, *res judicata* can act as a bar to virtually any sort of claim, including constitutional challenges to the facial validity of municipal regulations."); *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 646 (2d Cir.1998) (barring organization's free speech and equal protection challenges to the facial validity of ordinance and accompanying interpretive police department

regulations on the grounds that such claims had been, or could have been, litigated in previous action); *Watson v. The City of New York, et al.*, No. 92 Civ. 8779(JFK), 1998 WL 13841 at *5 (S.D.N.Y. Jan.14, 1998) (barring fourth amendment claim which plaintiff did not pursue in prior litigation, recognizing that *res judicata* bars plaintiff from seeking a second bite at the apple); *Parker v. Corbisiero*, 825 F.Supp. 49, 55 (S.D.N.Y.1993) (because plaintiff could have brought claim that statute was unconstitutional as applied to him in prior proceeding, plaintiff was barred by *res judicata* from making such claim in a second action).

Moreover, the court in *Word I* determined, in the context of a summary judgment motion, that NYDOCS's TB testing policy was a reasonable prison regulation in light of the legitimate, neutral interest of NYDOCS in preventing the spread of TB. Thus, the court in *Word I* concluded that defendant was "entitled to summary judgment dismissing plaintiff's claims that NYDOCS's failure to release her from TB ... violated her First Amendment rights." *Word I* at 11.

Because Plaintiff's First Amendment claims concerning the TB Hold, diet and medical and dental treatment could have been raised in Plaintiff's prior litigation, these claims are barred by *res judicata.*

*Plaintiff Has Not Stated A Claim Regarding the TB Hold With Respect to First Amendment Violations*

■ Even if Plaintiff's claims concerning alleged First Amendment violations regarding the TB hold are not barred by *res judicata,* Plaintiff's allegations that Defendants violated her First Amendment rights in connection with NYDOCS's conduct concerning the TB Hold, PPD testing and x-rays are insufficient to state a viable claim.

"In a prison context, an inmate does not retain those First Amendment rights that are 'inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Jones v. North Carolina Prisoners' Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)).

The standard for determining whether a prison regulation has an adverse impact on an inmate's constitutional rights was articulated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). A prison regulation is "valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. 2254. In *Turner*, the Supreme Court set forth a four-part test:

> First, there must be a 'valid rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it.... Moreover, the governmental objective must be a legitimate and neutral one.... A second factor ... is whether there are alternative means of exercising the right that remain open to prison inmates.... A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.... Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Id.* at 89–90, 107 S.Ct. 2254.

Concerning the first factor, there is no dispute that NYDOCS has a legitimate, neutral interest in containing tuberculosis. *See Reynolds v. Goord*, 103 F.Supp.2d 316, 336 (S.D.N.Y.2000) ("[p]reventing the spread of an infectious, deadly disease is undoubtedly a critical objective for DOCS, and the subsidiary goals—including prescribing preventive therapy for latent TB infection and effective monitoring of epide-

miological numbers—are equally important"); *Jolly v. Coughlin,* 76 F.3d 468, 477 (2d Cir.1996) (correctional officials have an affirmative obligation to protect inmates from infectious disease). There is nothing in the Plaintiff's complaint alleging otherwise.

Concerning the second factor—alternative means of exercising a right—in asserting that she should not be subject to the testing requirements in connection with the TB Hold, Plaintiff has not identified any way of accommodating her that does not pose the epidemiological risks identified by the Defendants. Plaintiff's conclusory assertion that physical examination and counseling would be sufficient alternatives fails to address NYDOCS's interest in prescribing therapy for latent TB infection. *See Reynolds,* 103 F.Supp.2d at 327 (recognizing importance of preventative therapy for latent TB infections).

The third and fourth factors—the impact of accommodation of the asserted rights on the prison staff and prison resources and whether there are reasonable alternatives—weigh in favor of a finding that the TB Hold is rationally related to a legitimate penological interest. Plaintiff's complaint does not allege reasonable alternatives that would not adversely impact the health risks to prison staff and inmates or burden prison resources. Because Plaintiff has refused PPD tests and chest x-rays, NYDOCS has been unable to determine the extent to which Plaintiff poses a risk of contagion to the inmate population and NYDOCS staff. Plaintiff's complaint does not identify an alternative basis for determining latent TB infection, and thus fails to address the legitimate interest of NYDOCS in preventing the spread of tuberculosis.

Plaintiff cites *Reynolds v. Goord* in support of her request for injunctive relief. Her reliance on *Reynolds,* however, is misplaced. In *Reynolds* the plaintiff refused PPD tests but agreed to chest x-rays. The chest x-rays established that ,the plaintiff in *Reynolds* had little likelihood of being contagious. *Id.* at 335. On those facts, the court determined "that there is no rational connection between placing an inmate who refuses PPD testing [on] TB Hold and the health of the NYDOCS inmate population and staff." *Id.* at 337. Here, Plaintiff has refused all tests administered in connection with NYDOCS's tuberculosis monitoring program. Thus, as noted above, NYDOCS is unable to determine the extent to which Plaintiff poses a risk of contagion. "*Reynolds* does not support a blanket religious exemption to PPD testing in the absence of alternative diagnostic tools such as chest x-rays." *Word III,* at *3.

In light of the foregoing, the Court finds that Plaintiff can prove no facts demonstrating that her placement on TB Hold is not rationally related to a legitimate penological interest.

*Plaintiff's Fourteenth Amendment Claims*

■ Plaintiff's Fourteenth Amendment claims concerning NYDOCS's TB Hold policy and her diet are precluded under the doctrine of collateral estoppel by the final judgment addressing the same issues in *Word I.* Collateral estoppel forecloses a second litigation of an issue if: (1) the issue sought to be precluded is identical to the issue involved in a prior action; (2) the issue was actually litigated; (3) there was a final determination on the merits of that issue in the prior proceeding which was necessary to that judgment; and (4) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the issue. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992).

Plaintiff's Fourteenth Amendment claims concerning the TB Hold and her diet are same claims she asserted in *Word I.* In that case, the court cited *Whitley v.*

*Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) where the Supreme Court determined that the Eighth Amendment, "which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoner's" medical treatment. The Supreme Court recognized that "the Due Process Clause [of the Fourteenth Amendment] affords ... no greater protection than does the [Eighth Amendment]." *Id.* In light of the Supreme Court's determination, the court in *Word I* considered Plaintiff's claims concerning her placement on TB Hold and her medical and dental claims under the Fourteenth Amendment and determined that Plaintiff did not demonstrate that defendant violated her rights under the Fourteenth Amendment. *Word I,* slip op. at 11–12. Because Plaintiff's Fourteenth Amendment claims were decided against the Plaintiff in *Word I,* she is precluded from asserting them again here.

### Denial of Medical and Dental Services

■ Plaintiff's claims concerning alleged denial of medical care and dental services were fully litigated and decided in *Word II,* where the District Court analyzed them under the Eighth Amendment. To the extent Plaintiff asserts Fourteenth Amendment claims concerning her medical and dental treatment, the Supreme Court's analysis in *Whitley,* which held that Eighth Amendment was the appropriate source of protection for claims relating to medical treatment, applies equally here and such claims are precluded in this case. To the extent Plaintiff's claims concerning her medical and dental treatment arise under the First Amendment, these claims could have been raised in *Word II,* and accordingly, are dismissed on the grounds of *res judicata.*

### The Eleventh Amendment Bars Suit Against Defendants Croce and Goord in Their Official Capacities

In *Word II,* the District Court also held that Plaintiff did not have a claim against Defendants in their official capacities. *See Word II,* 169 F.Supp.2d at 226–227. Here Plaintiff also seeks money damages against Defendants Croce and Goord, whom she is suing in their personal and official capacities. As determined by the District Court in *Word II,* to the extent Plaintiff seeks money damages against Defendants in their official capacities, the Eleventh Amendment bars her claims. *Id.* (and discussion therein). These claims thus also are barred by *res judicata.* For the reasons set forth by the District Court in *Word II,* and in light of the District Court's determination in that case, the complaint is dismissed as against Defendants Croce and Goord insofar as it seeks money damages against them in their official capacities.

### Plaintiff Does Not Allege Defendants Croce and Goord had Personal Involvement in the Alleged Constitutional Deprivations

■ In *Word II,* the District Court further held that Plaintiff did not state claims against Defendants in their personal capacities with respect to the subject matter of Plaintiff's complaint. *See id.* 169 F.Supp.2d at 227–228. Accordingly, Plaintiff's claims against the Defendants in their personal capacities are barred by *res judicata* with respect to those claims. As the District Court held in *Word II,* "[w]here damages are sought in a Section 1983 action, the defendant must be responsible for the alleged constitutional deprivation: 'the general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.' " *Word II* at 227 (citing *Al–Jundi v. Estate of Rockefeller,* 885 F.2d

1060, 1065 (2d Cir.1989) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977)).

Here, as in *Word II*, Plaintiff has alleged no facts showing direct involvement by Defendants Croce and Goord. At most, Plaintiff makes conclusory allegations that Defendants Croce and Goord had knowledge of the constitutional violations alleged in her complaint. *See Smith v. Keane*, No. 96 Civ. 1629(JGK), 1998 WL 146225, at *6 (S.D.N.Y. Mar.25, 1998) (dismissing claims against supervisor where conclusory allegations in complaint lacked any particularized facts showing supervisor's personal involvement in alleged constitutional violations). Plaintiff does not allege that either Defendant helped create NYDOCS's policies concerning mail procedures, medical testing for tuberculosis, diet, dental and other medical treatment that Plaintiff contends violate her constitutional rights. *See Odom v. Sielaff*, No. CV–920571(DGT), 1995 WL 625786, at *6 (E.D.N.Y.Oct.12, 1995) (summary judgment granted where named defendants were high ranking officials who had no personal involvement in the alleged Eighth Amendment violations). Accordingly, the complaint is dismissed as against Defendants Croce and Goord in their personal capacities.

*Prison Mail*

■ Plaintiff asserts that NYDOCS officials open and inspect her mail outside of her presence. In *Word II*, the District Court observed that Plaintiff had failed to distinguish between legal mail and ordinary mail. *Id.*, 169 F.Supp.2d at 228. As the District Court recognized in *Word II*, "there is no question that prison officials may open incoming mail to ensure that no contraband is contained in the correspondence." *Id.* (citations omitted); *see also Cruz v. Jackson*, No. 94 Civ. 2600(RWS), 1997 WL 45348, at *9 (S.D.N.Y.Feb.5, 1997) ("legitimate security and penological interests have been held to outweigh a prisoner's interest in mail"). The District

Court in *Word II* further recognized that, with respect to legal mail: "It is accepted that a prisoner must be present when, for whatever reason, legal mail (clearly marked as such) is opened by prison officials." *Id.* 169 F.Supp.2d at 228 (citing *Standley v. Lyder*, No. 99 Civ. 4711 GEL, 2001 WL 225035, at *2 (S.D.N.Y.Mar.7, 2001)). The District Court in *Word II* held that Plaintiff had not stated a claim with respect to the treatment of her nonlegal mail, and dismissed the claim to that extent. *Id.* Regarding potential claims about her legal mail, the District Court noted that Plaintiff might have a basis for such a claim, if she alleged that prison officials were opening legal mail outside of her presence, but not as against defendants Croce and Goord, because, she had alleged no personal involvement on their part. *Id.*

In this case, Plaintiff still has not alleged that her claims concern legal mail. Further she has asserted her mail claim against the same defendants, Croce and Goord, that the court in *Word II*, concluded were not appropriate targets of the claim. Plaintiff has failed a second time to identify whether her claims concern legal mail and has again failed to identify as defendants, and allege personal involvement on the part of, the parties responsible for opening her mail. Because there is no factual basis in the complaint showing that Plaintiff's claim concerns legal mail and because there is no allegation in Plaintiff's complaint that Defendants Croce and Goord had any involvement in the opening of her mail, this claim is dismissed.

*Defendant's Request that the Plaintiff Be Enjoined from Further Lawsuits*

■ Defendants ask that the Court enjoin Plaintiff from filing further suits concerning NYDOCS's TB Hold, her dietary, medical and dental claims. This is the fifth lawsuit concerning these claims and

the Court and the State of New York have been burdened repeatedly with responding to and adjudicating Plaintiff's claims concerning the same nucleus of operative facts. "The equity power of a court to give injunctive relief against vexatious litigation is an ancient one which has been codified in the All Writs Statute." *Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir.1990) (citing *In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir.1982) (per curiam), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983)); 28 U.S.C.A. § 1651(a) (2002). Accordingly, the Court hereby enjoins Plaintiff from filing, without prior leave of this Court, further actions in federal court concerning the TB testing, TB Hold, diet, and medical and dental care claims raised in this case.

### *CONCLUSION*

In light of all of the foregoing, Defendants' motion is granted and Plaintiff's complaint is dismissed. Because Plaintiff's case is dismissed, Plaintiff's request for a preliminary injunction is denied as moot. Plaintiff shall not file, without prior leave of court, further actions in federal court concerning the TB testing, TB hold, diet and medical and dental care claims raised in this case.

The Court certifies, pursuant to 28 U.S.C. section 1915(a)(3), that any appeal taken from this decision would not be taken in good faith.

SO ORDERED.